**GEAR, INC., Plaintiff,**

v.

**L.A. GEAR CALIFORNIA, INC.; L.A. Gear Licensing Corp.; L.A. Gear, Ltd.; and Robert Y. Greenberg, Defendants,**

**Bettye Martin Musham and William Musham, Additional Counterclaim Defendants.**

**No. 85 Civ. 5754 (CSH).**

United States District Court, S.D. New York.

July 29, 1987.

510

Pennie & Edmonds, New York City, Walter G. Marple, Jr., Judith D. Cohen, of counsel, for plaintiff.

Kelley Drye & Warren, New York City, Robert A. Horowitz, of counsel, Arant Kleinberg & Lerner, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This dispute between these young, highly successful business enterprises focuses this Court's attention on the commercial value of the simple English word "gear."

Plaintiff Gear, Inc. sues to enjoin defendants from using the mark "L.A. Gear" on its goods or in its corporate names, for cancellation of defendants' trademark registration, and for an accounting. It brings causes of action under sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a) ("section 32(1)" and "section 43(a)" respectively), and under New York State law of unfair competition and dilution, N.Y.Gen.Bus.Law § 368–d. Defendants counterclaim for cancellation of plaintiff's registered trademarks, 15 U.S.C. § 1119, and for tortious interference with its business, and seek attorney's fees under 15 U.S.C. § 1117.

The parties cross-move for summary judgment. Defendant L.A. Gear, Ltd. renews its motion to dismiss for lack of *in personam* jurisdiction. Additional counterclaim defendants Bettye Martin Musham and William Musham also move to dismiss the counterclaims as to them only.

Much of the factual background is set forth in this Court's previous Memorandum Opinion and Order dated March 26, 1986, reported at 637 F.Supp. 1323 (S.D.N.Y. 1986), denying plaintiff's motion for a preliminary injunction. Familiarity with that opinion is assumed.

## I. The Marks and Goods in Suit

It is useful at the outset to be precise about what marks are at issue and the goods to which they pertain.[1]

Plaintiff has registered the mark GEAR for luggage, garment bags, tote bags, and gym bags;[2] for textile fabrics;[3] and for bath accessories—shower curtains and towels.[4] NEW COUNTRY GEAR was registered for sheets, towels, and textile fabrics of natural and synthetic fibers[5] and for paper goods, dinnerware and cookware, and bed and bath accessories of cloth and vinyl.[6] For textile and vinyl-coated paper wallcovers, AMERICAN COUNTRY GEAR was registered.[7] Plaintiff's first

registration for clothing—men's and misses ready-to-wear dresses, pants, skirts, blazers, belts, hats, ties, scarves, shoes and boots—was for GEARWEAR.[8] Most recently, plaintiff obtained registration for GEAR [heart symbol] KIDS for wool and acrylic fabrics, throws and blankets, household linens, and children's clothing and footwear.[9]

Plaintiff has also used the mark GEAR on children's clothing. Supplemental Decl. of Charles Gilman ¶ 2; May 5, 1987 Letter of Robert A. Horowitz at 1. To date it has failed to persuade the Patent and Trademark Office to register GEAR for this use. *See* Def.Ex. 100–6 (final rejection by examiner of plaintiff's registration application). It is pursuing administrative appeals from the denial of registration. Gear has not relied on its common law rights in this unregistered mark in its papers filed in support of this motion; indeed, it was mentioned only in the defendants' papers.

All examples in the record of plaintiff's marks are printed in a type style called "Avant Garde Bold," modified to give a stenciled look. *See* Saemann Decl. ¶ 20; Def.Ex. 17, 18; Ex. B to Verified Amended Complaint. This sample, a reduction of Defendants' Exhibit 17, is representative:

---

1. The parties—plaintiff in particular—have tended to speak broadly about the "GEAR family of marks" or "plaintiff's trademarks." These sweeps of the pen are not meaningful ways of analyzing this case, involving a number of marks on a number of product lines.

2. Reg. No. 1,208,360 (hereinafter cited as '360), registered September 14, 1982; alleged first use date October 1977.

3. Reg. No. 1,202,786 (hereinafter cited as '786) registered July 27, 1982; alleged first use date November 5, 1979.

4. Reg. No. 1,269,939 (hereinafter '939), registered March 13, 1984; alleged first use date Nov. 1980.

5. Reg. No. 1,183,014 (hereinafter '014), registered December 22, 1981; alleged first use date November 5, 1979.

6. Reg. No. 1,274,307 (hereinafter '307), registered April 17, 1984; alleged first use date November, 1980.

7. Reg. No. 1,242,890 (hereinafter '890) registered June 21, 1983; alleged first use date March 5, 1981.

8. Reg. No. 1,237,409 (hereinafter '409), registered May 10, 1983; alleged first use date November 15, 1979.

9. Reg. No. 1,406,786 (hereinafter '786), registered August 26, 1986; alleged first use date May 5, 1984.

Defendants' only mark is "L.A. Gear." Their primary product line is "athleisure" and casual footwear, but they also licence the mark for use on clothing. A licensing agreement was also concluded for fabric bags and totes, but defendants' licensee terminated that agreement after it was joined as a defendant in this lawsuit. *See* 637 F.Supp. at 1332.

For their line of shoes and clothing, defendants have obtained registration for their mark, "L.A. Gear." [10] The mark frequently appears in a stylized script:

Def.Ex. 54. A block letter version using a modified "Tera" type style is also often used:

Def.Ex. 9. *See* Saemann Aff. ¶ 19; Def.'s Rule 3(g) Statement ¶ 1.

## II. Cancellation of Plaintiff's Registrations

■ Section 37 of the Lanham Act, 15 U.S.C. § 1119, empowers the court to order the cancellation of registrations in any civil action in which the validity of the mark is placed in issue. *Dymo Industries v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) (per curiam). Thus, in an infringement action by a holder of a registered mark, the defendant may counterclaim for cancellation. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 7,

13–14 (2d Cir.1976) (Friendly, J.); 2 J.T. McCarthy, *Trademarks and Unfair Competition* § 30:32 (2d ed. 1984). Defendants contend plaintiff's registrations should be cancelled because the registration applications contained fraudulent misstatements.[11] Because the fact of registration has evidentiary consequences, *see* pages 515, 518–19 *infra*, I begin with this counterclaim.

■ Trademark registrations obtained by fraud are subject to cancellation. *Edison Brothers Stores, Inc. v. Cosmair, Inc.*, 651 F.Supp. 1547, 1563 (S.D.N.Y.1987). However, misstatements in registrations applications will cause cancellation only if

10. Reg. No. 1,325,941 (hereinafter '941), registered March 19, 1985; alleged first use date December 10, 1982.

11. Although defendants assert in their first counterclaim that plaintiff's registrations should be cancelled because the marks are all generic, *see* Amended Verified Answer and Counterclaims ¶¶ 37–40, they fail to argue this point in their motion papers. They argue that the word "gear" standing alone is generic in relation to clothing and shoes, and they do submit evidence that "gear" is generic as to bags, but they limit their cancellation argument to the alleged frauds.

# 513

they were made with knowledge of their falsity and if they were material to the decision to grant the registration application. *Ibid.* Fraud must be proven by clear and convincing evidence. *The Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 670 (7th Cir.1982); 2 McCarthy, *supra*, ¶ 31:21.

■ Defendants point to a number of alleged falsehoods in several of Gear's registration applications. First, they note that Bettye Martin Musham, plaintiff's president, founder and chief executive officer, testified at her deposition that the mark GEAR was designed in 1978,[12] even though plaintiff's registration application '360 placed the first use date in October, 1977. Later in her testimony, however, Musham recanted and swore 1977 was correct. Assuming *arguendo* the materiality of the discrepancy, this credibility issue is for the trier of fact to resolve, not for summary judgment. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).[13]

■ Next, defendants note that plaintiff falsely identified footwear as goods covered by its GEARWEAR mark, registration number '409. Def.Ex. 51. Plaintiff's amended application to register "GEAR" for children's clothing also included footwear. Def.Ex. 100. In fact, plaintiff has never used any of its marks on footwear. Plaintiff's Response to Request for Admissions 3 and 4, Def.Ex. 99. However, defendant has not even attempted to argue

that this conceded falsehood was material.[14] And the application to register GEAR for use on children's apparel has been denied, so there is no registration to cancel.

Finally, defendants assert that Musham swore falsely that certain substitute specimens submitted to the Patent and Trademark Office of the use of "GEARWEAR" had been used in commerce prior to the filing date of March 31, 1980. In fact, the substitute specimens were prepared after May 12, 1982, the date the examiner requested the substitute specimens.

■ I agree with plaintiff, however, that it substantially complied with the examiner's request if it provided specimens representative of use before March 31, 1980. A successful business would not ordinarily be expected to have on hand an inventory of two-year old goods. Even if the defendants' reading comports with the examiner's intent, I cannot assume the plaintiff knew that was the examiner's intent when it filed the substitute specimens.

The question, then, is whether the substitute specimens were truly representative of the use of the mark before the filing date. Put this question at her deposition, Musham's memory failed her. *See* Plaintiff's Reply Mem. at 4. Defendants have provided no other proof of fraud. Despite Musham's startling lapse, I hold defendants have failed to show the absence of a genuine issue of fact on this material issue.[15]

Accordingly, defendants' motion for summary judgment on the issue of cancellation is denied. F.R.Civ.P. 56(c).

---

**12.** The parties cite extensively to Ms. Musham's deposition transcript but have failed to provide a copy to the Court. Though they emphasize different testimony, their summaries of her testimony do not conflict and I assume they are accurate.

**13.** Defendants make a point of plaintiff's refusal to answer its interrogatory on first use dates. Supp. Lerner Decl. at 1–2. However, they have not moved to compel a response, and I would not sanction plaintiff on this issue absent a failure to comply with an order directing an answer. F.R.Civ.P. 37.

**14.** The absence of evidence of materiality does not, in my view, bar this Court from considering these falsehoods in balancing the equities in this case. *See* pages 517–18 *infra.*

**15.** Defendants' reliance on *Orient Express Trading Co. v. Federated Department Stores*, 84 Civ. 5964 (CBM) (S.D.N.Y. Jan. 28, 1987) [Available on WESTLAW, DCT database] is misplaced. There, Judge Motley cancelled plaintiffs' registrations for fraud on the Patent and Trademark Office after a plenary trial at which allegations of knowing falsehood and materiality were proven.

### III. Plaintiff's Lanham Act Claims [16]

#### A. "L.A. Gear" as a Trademark on Clothing and Shoes

#### 1. Eligibility of "Gear" for Protection

Trademark law recognizes the commercial drawing power of congenial symbols—particularly, words and their presentation. *Mishawaka Manufacturing Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1942). However, the eligibility of a word or phrase for trademark protection and the scope of any such protection vary. Four familiar categories of terms have been identified. In ascending order of protection, they are: generic, descriptive, suggestive, and arbitrary or fanciful. *Abercrombie & Fitch, supra*, 537 F.2d at 9.

■ A term is generic if it "refers, or has come to be understood as referring, to the genus of which the particular product is a species." *Ibid.* A generic term "implies reference to every member of a genus and the exclusion of individuating characteristics." *Eastern Air Lines, Inc. v. New York Air Lines, Inc.*, 559 F.Supp. 1270, 1274 (S.D.N.Y.1983). The question is whether the principal significance of the word to the consuming public is as an indication of the nature or class of the article rather than as an indication that it emanated from a particular (possibly anonymous) source. *Feathercombs, Inc. v. Solo Products Corp.*, 306 F.2d 251, 256 (2d Cir.), *cert. denied*, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962); *see McGregor-Doniger Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979). A generic term is not eligible for trademark protection, and a trademark infringement action cannot be predicated on its use. *American Cyanamid v. Connaught Laboratories, Inc.*, 800 F.Supp. 306, 308 (2d Cir.1986).

A term is descriptive if it "forthwith conveys an immediate idea of the ingredi-ents, qualities or characteristics of the goods." *Stix Products, Inc. v. United Merchants & Manufacturers Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968) (quoted in *Abercrombie & Fitch, supra*, 537 F.2d at 11). Because a descriptive term is " 'generally useful in approximately [the same] form to all merchants marketing such goods,' " *ibid.* (quoting 3 Restatement, Torts, § 721 comment a (1938)), it can receive protection only if it has "become distinctive of the applicant's goods in commerce," 15 U.S.C. § 1052(f)—if it has acquired "secondary meaning." *McGregor-Doniger, supra*, 599 F.2d at 1131. The distinction between descriptive and generic terms is one of degree. " [A] generic name conveys information with respect to the nature or class of an article, whereas a descriptive term supplies the characteristics and qualities of the article, its color, order, functions, dimensions, and ingredients.' " *Stix Products, supra*, 295 F.Supp. at 490 n. 36 (quoting 3 R. Callman, *The Law of Unfair Competition and Trade-Marks* § 70.4 at 1057 (2d ed. 1950)).

■ Suggestive terms require "imagination, thought and perception to reach a conclusion as to the nature of goods." *Abercrombie & Fitch, supra*, 537 F.2d at 11 (quoting *id.* at 488). Fanciful and arbitrary terms are those employing common words in uncommon ways. *Ibid.* Suggestive and arbitrary or fanciful terms receive trademark protection without proof of secondary meaning. *Ibid.*

Defining these categories barely suggests the difficulty courts have found applying them. The difficulty of the inquiry is compounded by the fact that the category applied to a term may vary with the commercial context in which the term is used. A term may, for example, be generic when applied to one product and descriptive or suggestive for another. *Id.* at 9, 10.[17] Ultimately, the question is: "What

---

**16.** Plaintiff's causes of action under section 32(1) and 43(a) are identical and the analysis that follows applies to both. *See Playboy Enterprises v. Chuckleberry Publishing, Inc.*, 687 F.2d 563, 566 (2d Cir.1982); *Inc. Publishing Corp. v. Manhattan Magazine, Inc.*, 616 F.Supp. 370, 377 (S.D.N.Y.1985), *aff'd mem.* 788 F.2d 3 (2d Cir. 1986).

**17.** As Judge Friendly explained in *Abercrombie & Fitch*, " 'Ivory' would be generic when used to describe a product made from the tusks of ele-

do the buyers understand by the word for whose use the parties are contending?" *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y.1921) (L. Hand, J.). That is a question of fact. *In re Northland Aluminum Products*, 777 F.2d 1556, 1559 (Fed.Cir.1985); *see Abercrombie & Fitch, supra,* 537 F.2d at 11–13; *Eastern Air Lines, supra,* 559 F.Supp. at 1274.

■ In this case, defendants contend that the term "gear" is generic as applied to clothing. Finding no genuine issue of material fact on this question, I hold defendants are correct as a matter of law. F.R.Civ.P. 56(c).

■ Preliminarily, I note that the statutory presumption that registered marks are not generic, *see McGregor-Doniger Inc., supra,* 599 F.2d at 1132; 15 U.S.C. § 1115, does not assist plaintiff on this issue. The presumption applies only to "the goods or services specified in the registration." § 1115(a).[18] Plaintiff's registrations for the word "gear" standing alone do not apply to clothing. Indeed, the examiner has refused to register "GEAR" for those goods. Plaintiff's only registered mark for clothing is "GEARWEAR."[19] Registration of this combination of terms is not evidence that "gear" alone is not generic.[20]

I turn, then, to the evidence on this issue.

phants but arbitrary as applied to soap." 537 F.2d at 9 n. 6.

**18.** 15 U.S.C. § 1115(a) provides, in pertinent part:

Any registration ... of a mark registered on the principal register ... and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude an opposing party from proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered.

**19.** In fact, it is appears that plaintiff did not begin using "GEAR" by itself on clothing until after defendants began using "L.A. Gear" on clothing. In its application to register "GEAR"

■ Evidence of the public's understanding of a term may be found in consumer surveys, dictionary definitions, newspapers and other publications. *Northland Aluminum Products, supra,* 777 F.2d at 1559. Also probative is generic use by competitors, unchallenged by plaintiff, 1 McCarthy, *supra,* § 12:2 at 529; *see Abercrombie & Fitch, supra,* 537 F.2d at 12; testimony of lexicographers, *Eastern Air Lines, supra,* 559 F.Supp. at 1274–75; generic use of the term by plaintiff, 1 McCarthy, *supra,* § 12:2 at 529; and use of the term by third parties in trademark registrations. *Tektronix, Inc. v. Daktronics, Inc.,* 534 F.2d 915, 916–17 (C.C.P.A.1976).

First, some dictionary definitions. Widely used dictionaries of the English language offer the following as definitions of "gear":

"... 2. Equipment, such as tools, clothing, or the like, required for a particular activity or purpose; paraphernalia...." *The American Heritage Dictionary of the English Language* 547 (New College Ed. 1976).

"1a: CLOTHING, GARMENTS b: movable property: GOODS 2: EQUIPMENT, PARAPHERNALIA < fishing ˜> ...." *Webster's New Collegiate Dictionary* 476 (1976).

"... 5. portable items of personal property, including clothing; possessions ..." *The Random House Dictionary of*

for infants' and children's clothing, plaintiff claimed a first use date of May, 1984. Def.Ex. 100–1. At that point, defendants' license with Doe-Spun, Inc. and Calabash Fashion Ltd. for use of "L.A. Gear" on children's apparel had been effective for five months.

**20.** In fact, in response to a Patent and Trademark Office action initially denying plaintiff's application to register GEARWEAR for lack of distinctiveness, plaintiff argued: "GEARWEAR is not only or solely descriptive of the goods. The one word mark is a clever and arbitrary combination of *two descriptive terms....*" Def.Ex. 51–3 (emphasis added). Absent proof of secondary meaning, a descriptive term is not eligible for registration. 15 U.S.C. § 1052(d). Plaintiff is not estopped from taking a different position here, but its admissions are evidence, *see* 2 McCarthy, *supra,* § 32.33, and it has offered no evidence that "gear" by itself has secondary meaning when used on clothing.

*the English Language* 588 (1966) (Def.Ex. 100–5).

"... 5. Clothes; apparel; garb...." *Funk & Wagnalls New Standard Dictionary of the English Language* (1945) (Def.Ex. 100–5).

That these definitions are an accurate reflection of one way the word "gear" is commonly used is confirmed by the existence of a number of third-party registrations for trademarks on apparel that include the word "gear." Def.Ex. 56–1, 56–2; Lerner Decl. ¶¶ 53–55. Some are used in connection with words that explicitly suggest a specific use of the apparel ("FIELDGEAR;" "GYM–GEAR"); others are less suggestive ("FIFTHGEAR;" "BODYGEAR;" "REDIGEAR;" "MULTI-GEAR") Plaintiff concedes that many of these registered marks are being actively used. Plaintiff's Reply Mem. at 16. And even if there was no evidence of actual use, the registrations would still be evidence of the meaning to the public of the term at issue. *See Tektronics, supra,* 534 F.2d at 917 (even absent evidence of actual use of registered third-party marks, third party registrations "may be given some weight to show the meaning of a mark in the same way dictionaries are used").

Use of "gear" in periodicals also supports defendants' position. Common use of "gear" to mean wearing apparel is demonstrated by the computer word search by L. Kenneth Rosenthal, whose declaration is part of defendants' moving papers. Representative uses include:

"... He used to call on Mrs. Reagan in his usual work gear of a Ralph Lauren Polo shirt, jeans and loafers.- ..." Def.Ex. 102–5, from *The Washington Post* Jan. 24, 1981.

"... found the formula, sought by most mothers of 9–year-olds children [sic], for parting her daughter Amy from her favorite gear of jeans and jumpsuits...." Def.Ex. 102–5, from *The Washington Post* Jan. 11, 1977.

"Behind the restaurant sparkles a lively boutique filled with salty gear: sailing tops that look like rugby shirts, belts embossed with spouting whales, 'croak-ies' to hold your glasses against the wind ..." Def.Ex. 102–7, from the *Los Angeles Times* Aug. 3, 1986.

"Do use protective gear—gloves, face mask, long-sleeved shirt or jacket, etc." Def.Ex. 102–7, from The Associated Press Oct. 9, 1979.

"In most parts of the world, save Europe and mainland U.S.A., shirts and trousers are the hot-weather male gear for most occasions...." Def.Ex. 102–7, from *The Washington Post* July 19, 1979.

That not all the uses cited by Rosenthal prove his point, *see* Plaintiff's Reply Mem. at 11–14, does not diminish the evidentiary value of those that do.

The evidence plaintiff offers to prove "gear" is not a generic term for clothing does not save it from summary judgment. The word search by plaintiff's attorney, Judith D. Cohen, demonstrates only that the word "gear" is more frequently used in its several other meanings than as a term for wearing apparel. A word may have more than one generic use, and it is protected in each of its generic uses from appropriation by any one merchant. *Abercrombie & Fitch, supra,* 537 F.2d at 11. Even if there are other more common synonyms for the same concept, the term at issue is still generic if its principal meaning in the relevant market is generic. *S.S. Kresge Co. v. United Factory Outlet, Inc.,* 598 F.2d 694, 696 (1st Cir. 1979); *Eastern Air Lines, supra,* 559 F.Supp. at 1275; *Loctite Corp. v. National Starch & Chemical,* 516 F.Supp. 190, 201 (S.D.N.Y.1981). A merchant may not "impoverish the language of commerce" by appropriating one of several synonyms for its exclusive use. *Bada Co. v. Montgomery Ward & Co.,* 426 F.2d 8, 11 (9th Cir.), *cert. denied,* 400 U.S. 916, 91 S.Ct. 174, 27 L.Ed. 2d 155 (1970), quoted in *American Cyanamid, supra,* 800 F.2d at 308.

Plaintiff argues that "gear" is so indefinite that standing alone it does not identify a particular "genus" of goods. Plaintiff's Mem. at 10. Its use by itself, Gear asserts, is arbitrary.

But a term need not " 'precisely describe and define the goods' " to be generic. *Loc-*

*tite Corp., supra,* 516 F.Supp. at 201 (quoting *Cummins Engine Co. v. Continental Motors Corp.,* 359 F.2d 892, 894 (C.C.P.A. 1966)). Nor must the word have only one meaning to be generic. *Abercrombie & Fitch, supra,* 537 F.2d at 11. In the contexts revealed by many of the examples in the Rosenthal Declaration and accompanying exhibits, the word is used interchangeably with "apparel." That "gear" does not tell the buyer whether a machine part, a fishing net, or a shirt is being discussed is not proof that its principal meaning to the buying public is to identify a source of the goods. There is no such proof in the record.

■ Plaintiff makes a point of the publicity and advertising its products have received. That may be evidence of the strength of its mark. *McGregor-Doniger Inc., supra,* 599 F.2d at 1132; *Inc. Publishing Corp., supra,* 616 F.Supp. at 379. It does not speak to validity. *Id.* at 378.

> [N]o matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers the product of the right to call an article by its name.

*Abercrombie & Fitch, supra,* 537 F.2d at 9.

Plaintiff having failed to raise a genuine issue of material fact, I grant defendants' motion for summary judgment on this issue.

### 2. Equitable Considerations

■ In infringement cases equitable factors may also play a decisive role. *See generally Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531 (2d Cir.1964) (Friendly, J.). "The nature of the senior user's priority, the senior user's delay in asserting its claim, and the harm to the junior user as compared to the benefit to the senior user that would result from the requested injunctions" are all appropriate considerations. *Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208, 214 (2d Cir.1985).

■ This Court's Opinion dated March 26, 1986 recounted in detail plaintiff's lethargy in prosecution of its claims. *See* 637 F.Supp. at 1329–33. For present purposes it is sufficient to say that Gear knew "L.A. Gear" was being licensed for clothing fourteen months before it filed suit and was explicitly told ten months before it brought this action that defendants intended to continue its licensing efforts. Undisputedly, defendants undertook a substantial expansion of their footwear line during this period of silence. Greenberg Decl. ¶ 35; Defendants' Rule 3(g) Statement ¶ 27. *See Chandon Champagne Corp., supra,* 335 F.2d at 535 ("[an] owner's delay in asserting his rights may lead the defendant to build up innocently an important reliance on the publicity of his mark, so that its loss would cost dearly").

Furthermore, plaintiff knew at least as early as December 11, 1980 that the apparel field was crowded with competitors using the word "gear." On that date, a trademark examiner issued an Office Action citing a pending application to register "LE GEAR" against plaintiff's application to register "GEARWEAR" for the same product line. In an amendment to plaintiff's registration application dated June 11, 1980, plaintiff's counsel—also its present counsel—distinguished "LE GEAR" based on its commercial impression and convinced the Office to register plaintiff's mark. Plaintiff knew it was squeezing its mark into an already dense crowd. *See* Lerner Decl. ¶¶ 9, 21–26. *Cf.* 1 McCarthy, *supra,* § 11:26 at 511 ("a mark which is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive' ").

To compel defendants to change their corporate names and completely forego use of their well-publicized mark would be devastating to their business. In contrast, even if plaintiff loses some sales or potential licensees because "L.A. Gear" continues to be used on clothing and footwear, the harm to plaintiff from denial of the sought-after injunction in these product lines would surely be less severe.

Alone or in combination, these concerns might tip the equitable scales sufficiently in defendants' favor to preclude relief as to the clothing and footwear product lines. But there is more here. Plaintiff has used, and appears still to be using, the "R" in a circle statutory notice of registration on an unregistered mark: "GEAR" on children's clothing. I am reluctant to conclude that this abuse of the statutory notice is intentional, but no other explanation appears. Plaintiff continues this practice even though defendants' motion papers clearly put it on notice that it was using the symbol improperly. Def.Reply Mem. at 15–16; May 5, 1987 Horowitz Letter. Nor has plaintiff made any attempt to explain its wrongful inclusion of footwear among the products listed in some of its registration statements. *See* page 513 *supra.*

In contrast, evidence of bad faith on defendants' part is entirely lacking. Defendants removed an improper statutory notice when its impropriety was called to its attention. Plaintiff's claim that "L.A. Gear" is so close to "GEAR" that only bad faith accounts for its adoption is unpersuasive. Those involved in the choice of defendants' mark each swear they had never heard "GEAR," and plaintiff does not suggest it has even tried to cross-examine them at depositions on this question. The abundance of other marks using the word "gear" makes plaintiff's self-aggrandizing argument untenable.

In my view, plaintiff does not come before the Court with clean hands, and, at least combined with the tardiness of its suit, this bars the sought-after relief as to clothing and shoes. *See L.F. Gaubert &*

Co. v. Institute of Electrical and Electronics Engineers, 563 F.Supp. 122, 128 (E.D.La.1983); 1 McCarthy, *supra,* § 19:53 at 1004 ("Use of § 29 statutory notice such as the ["R" in a circle] adjacent a mark not federally registered is a misuse of the federal notice ... [which] may constitute a form of inequitable 'unclean hands' so as to bar ... the maintenance of an infringement case ...").

For equitable reasons as well as the generic nature of the word "gear" as applied to apparel, I grant defendants summary judgment under the Lanham Act as to clothing and shoes.

## B. "L.A. Gear" on Handbags and Soft Luggage [21]

Plaintiff's claim as to the defendants' use of "L.A. Gear" on bags and luggage stands in a different stead. That is so first because, although I view the question as close, I cannot hold there is no genuine issue of fact whether "gear" is generic as applied to bags and soft luggage.

Plaintiff owns a federally registered trademark on "GEAR" for bags and luggage. The registration affords plaintiff a strong presumption of validity for that mark. *Aluminum Fabricating Co. v. Season-All Window Corp.,* 259 F.2d 314, 316 (2d Cir.1958). Although bags and luggage fall within some of the dictionary definitions quoted at page 515, *supra,* and although the record includes substantial evidence that "gear" is used generically to refer to bags as well as clothing, *see* Def.Ex. 83, 102–1,[22] the evidence that

---

**21.** Although defendants do not presently appear to be marketing or licensing "L.A. Gear" bags, that appears to be through no choice of their own. The license agreement for bags was terminated after plaintiff sued the licensee and obtained a settlement securing the abandonment of the license agreement. Since "voluntary cessation" will not moot an action for equitable relief, *City of Mesquite v. Aladdin's Castle,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1075, 71 L.Ed.2d 152 (1982), I do not see how involuntary cessation could do so. This claim may also impact on the amount of any accounting plaintiff might receive. Accordingly, I reach this claim despite the absence of any evidence that

defendants now license their mark for soft luggage and handbags.

**22.** Exhibit 83 shows use of the apparently unregistered mark "Urban Gear" on a line of slick-looking soft luggage.

Exhibit 102–1 consists of part of the product of a "Nexis" search for uses of "gear" proximate to the word "bag." At least two of these examples involve use of "gear" to mean "bag":

"Their gear ranged from battered fielder's gloves to well-stocked equipment bags ...." *Los Angeles Times* June 22, 1986.

"If you want a headcover to protect [your golf club], that's $10. And if you want a bag to

"gear" is used generically to mean "bag" or "luggage" is not as strong as the evidence that it is generic for clothing and shoes. Plaintiff offers no evidence other than its registration that "gear" is not generic for bags, and if I had already held a plenary trial and had the present record before me, I would be inclined to hold "gear" generic for bags as well and order plaintiff's registration cancelled. But there has been no trial, and since registration establishes a *prima facie* case of validity, I cannot say there is no genuine issue of fact whether "gear" is generic for bags and soft luggage.[23]

Having found a genuine issue of fact on validity, I turn to the second branch of a trademark case: infringement. "Given a valid trademark, the critical issue is whether there is any likelihood that an appreciable number of reasonable consumers would be misled, or simply confused, as to the source of the goods in question." *C.L.A. S.S. Promotions v. D.S. Magazines, Inc.*, 753 F.2d 14, 17 (2d Cir.1985). This is a question of fact. *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 115 (2d Cir.1984).

■ A number of factors bear on this issue. Judge Friendly's well-known "Polaroid formula," so named for *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), sets forth these factors for consideration: (1) the strength of plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) the likelihood that the prior owner will bridge the gap, (5) actual confusion, (6) defendants' good or bad faith in adopting its mark, (7) the quality of defendant's product, and (8) the sophistication of the buyers.

The Polaroid formula was not meant to be exclusive, and no single factor was meant to be determinative. *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1004 (2d Cir.1983); *Polaroid, supra*, 287 F.2d at 495. The equitable factors discussed earlier, *see* pages 17–20 *supra*, are also appropriate considerations. *See generally Edison Brothers, supra*, 651 F.Supp. at 1553; *Inc. Publishing Corp., supra*, 616 F.Supp. at 378.

■ Applying these factors to the case at bar, I hold summary judgment appropriate for neither plaintiff nor defendants.

■ *Strength:* The "strength" of a mark refers to its distinctiveness—"its tendency to identify the goods sold under the mark as emanating from a particular, possibly anonymous, source." *McGregor-Doniger, supra*, 599 F.2d at 1131. A registered mark is presumptively distinctive, *id.* at 1132; but that does not mean the mark is strong. *See Edison Brothers, supra*, 651 F.Supp. at 1555.

There is conflicting evidence on the strength of the mark "GEAR." Plaintiff has impressive sales figures, a substantial advertising budget, and has gained considerable publicity. *See McGregor-Doniger, supra*, 599 F.2d at 1132; *Edison Brothers, supra*, 651 F.Supp. at 1554; *Inc. Publishing Corp., supra*, 616 F.Supp. at 379. On the other hand, there is evidence of extensive third-party use of the word "gear" in other marks. *See Edison Brothers, supra*, 651 F.Supp at 1555.

■ *Similarity:* Close similarity between marks is not dispositive on likelihood of confusion; the question is whether the general impressions conveyed by the two marks are sufficiently alike that consumers are likely to be confused. *McGregor-Doniger, supra*, 599 F.2d at 1133–34. Even phonetically identical marks on different product lines, *see Edison Brothers supra*,

carry it in with the course logo on the side, that will cost you $70. Of course, don't plan on toting all that fancy gear around Shinnecock Hills' links layout for a while. There's a two-year waiting list to join the club." *Associated Press* June 14, 1986.

**23.** I do not endeavor to decide today whether summary judgment on validity is ever appropri-

ate against a holder of a registered mark. Even if a particularly strong showing that a term is generic could overcome, as a matter of law, the strong presumption of validity afforded a registered mark, defendants' showing here is not sufficiently strong to do so.

651 F.Supp. at 1555, and phonetically similar marks on similar products, *see Inc. Publishing Corp., supra,* 616 F.Supp. at 379–81, may not be so similar as to confuse if the presentation of the marks differs.

The typestyles used for "GEAR" and "L.A. Gear" are quite different, and defendants undisputedly seeks to portray a different image for their products than plaintiff. Indeed, plaintiff's president believes that the presentation of L.A. Gear products is "sleazy" and "in bad taste," Musham Dep. ¶¶ 192, 195, quoted in Plaintiff's Reply Mem. at 17, epithets she presumably would not direct at her own products. If true, the difference in appeal favors defendants. *Plus Products, supra,* 722 F.2d at 1006–07.

*Product Proximity and "Bridging the Gap":* Since I am here considering defendants' right to use "L.A. Gear" on bags that appear to be similar in composition and function to plaintiff's, I find the products very close and that there is little if any gap to bridge. On this product line, this factor favors plaintiff.

 *Actual Confusion:* Plaintiff concedes there is no evidence of actual confusion. *See* Plaintiff's Response to Defendants' Interrogatory Number 14, Def.Ex. 101; Defendants' Rule 3(g) Statement ¶ 7. Proof of actual confusion is not mandatory, but its absence supports an inference of no likelihood of confusion. *Inc. Publishing Corp., supra,* 616 F.Supp. at 386.

*Good Faith:* As noted earlier, *see* page 518 *supra,* there is insufficient evidence in the record from which a finding of bad faith on defendants' part could be inferred.

*Quality of Defendants' Products:* Although plaintiff maligns the presentation of defendants' products, it does not contend the products themselves are inferior.

*Sophistication of the Buyers:* There is no evidence in the record as to the sophistication of each sides' consuming public. Assuming without deciding that potential licensees for whose business the parties are competing are also a relevant market, they may also be assumed a sophisticated lot likely to notice the different commercial impressions conveyed by the marks, to realize that a large number of concerns use "gear" in their trade names, and perhaps even to have noticed the publicity surrounding this lawsuit.

*Other Evidence of Likelihood of Confusion:* Plaintiff has also submitted a number of affidavits from present Gear licensees who all opine in identical language that use of the trademark L.A. Gear on goods related to their product line would be detrimental to Gear and the licensee's business. Whatever the probative value of these form affidavits, they are not sufficiently weighty to warrant summary judgment for plaintiff.

Plaintiff also points to this statement by defendants' president and chief executive officer Robert Y. Greenberg, quoted in *Footwear News* October 7, 1985: "[Gear] ha[s] licensed some companies in the same categories as we have and I guess they are getting some pressure from the licensees." Plaintiff says this is an "unequivocal acknowledgment" of likelihood of confusion. Plaintiff's Mem. at 4. I disagree. It acknowledges that some of plaintiff's licensees prefer that "L.A. Gear" not be used on competing products, but the licensees' opinions are not dispositive on the confusion issue. Greenberg conceded nothing on the scope of protection available to the word "gear."

*Equitable Considerations:* The same equitable considerations discussed in connection with L.A. Gear's clothing and shoes pertain generally to its the "bags" aspect of Gear's prayer for relief. However, I am not convinced they apply in the present context with sufficient force to warrant summary judgment for defendants.

First, defendants' showing of detrimental reliance on plaintiff's delay in bringing suit is weaker in respect of handbags. Since defendants do not appear to be licensing their mark for handbags and luggage at present, an injunction against future use could not be termed "devastating." *Compare* page 517 *supra.* There is no evidence of abuse of the statutory notice on handbags. Finally, plaintiff's registration of the "GEAR" mark, with its presumption

of distinctiveness, and the existence of issues of fact on likelihood of confusion militates against barring plaintiff's claim at this stage. *See Inc. Publishing Corp., supra,* 616 F.Supp. at 397 (strength of showing of likelihood of confusion impacts on question whether plaintiff's delay should bar relief on equitable grounds).

Because there is conflicting evidence on this aspect of plaintiff's claims, the parties' cross-motions for summary judgment under the Lanham Act as to use of "L.A. Gear" on bags and soft luggage are denied.[24]

## IV. Plaintiff's State Claims

Plaintiff also asserts causes of action under New York common law of unfair competition and under New York's anti-dilution statute, N.Y.Gen.Bus.Law § 368–d.

▮▮▮▮ Essential to the common law unfair competition claim of misappropriation is a showing of bad faith. *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980). Here, there has been no showing of bad faith other than the circumstance of later adoption by defendants; plaintiff has made no effort to challenge defendants' assertions that those who created "L.A. Gear" had never heard of plaintiff or its marks. *See* pages 517–18, *supra.* In my view, no reasonable juror could conclude from this evidence that "L.A. Gear" was adopted in bad faith, and I grant summary judgment to defendants on this cause of action. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

▮▮▮ As to the statutory cause of action, my conclusion that "gear" is generic as applied to apparel disposes of the anti-dilution claim on this product line. *See Universal City Studios, supra,* 746 F.2d at 120 (to succeed on an anti-dilution claim, plaintiff " 'must possess a strong mark—one which has a distinctive quality or has acquired a secondary meaning which is capable of dilution' ") (quoting *Allied Maintenance Corp. v. Allied Mechanical Trades,*

*Inc.,* 42 N.Y.2d 538, 545, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977)); *Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 625 (2d Cir.1983) (section 368–d protects only "extremely strong marks" and may not even protect those that are arbitrary or fanciful).

▮▮▮ For handbags and soft luggage, summary judgment is not appropriate for either party. Infringement under section 368–d does not turn on likelihood of confusion, but likelihood of dilution. *Id.* at 624. Dilution is a "nebulous concept" referring to acts that threaten two distinct aspects of advertising value: " 'Junior uses may blur a mark's product identification or they may tarnish the affirmative associations a mark has come to convey.' " *Id.* at 625 (quoting 3 R. Callman, *The Law of Unfair Competition, Trademarks, and Monopolies* § 84.2 at 954–55 (footnote omitted)).

Neither party has bothered to apply this definition to the evidence in the present record. Indeed, neither party cited any case setting forth the test for infringement under the anti-dilution. For present purposes, it is sufficient to say that issues of fact remain on the strength of plaintiff's marks, *see* pages 519–20 *supra,* precluding summary judgment for plaintiff, and that defendant has not shown that the evidence in the record raises no genuine issue of fact regarding the two interests protected against dilution cited above.

## V. Personal Jurisdiction Over L.A. Gear Ltd.

Since plaintiff concedes no *in personam* jurisdiction lies over L.A. Gear, Ltd., I grant that defendant's motion to dismiss.

## VI. Motion to Dismiss by Additional Counterclaim Defendants

Defendants' second counterclaim charges plaintiff and the additional counterclaim defendants, Bettye Martin Musham and William Musham, with tortious interference with defendants' business. The Mushams move to dismiss this counterclaim.

---

**24.** I defer consideration of defendants' application for attorney's fees under 15 U.S.C. § 1117 pending complete resolution on liability under the Lanham Act.

Bettye Martin Musham is plaintiff's president and chief executive officer. William Musham is plaintiff's chairman. According to the Amended Verified Answer and Counterclaims, plaintiff "and the Mushams" commenced and are prosecuting this lawsuit knowing there are many other registered trademarks using the word "gear" that are more similar in appearance to plaintiff's than defendants' mark, used on products more similar to plaintiff's than defendants' products. ¶ 49. Nonetheless, it is alleged, plaintiff "and the Mushams willfully, deliberately and without justification induced licensees and prospective licensees to refrain from dealing with L.A. California and L.A. Licensing by, among other things, commencing this action and issuing one or more press releases in trade journals describing the litigation and threatening to commence litigation against such licensees and prospective licensees." ¶ 53.

The basis for the Mushams' motion to dismiss these counterclaims is something of a moving target. First, they note the apparently erroneous allegation, made upon information and belief, that the Mushams are residents of New York. In fact, they reside in Pennsylvania. June 24 Aff. of Bettye Martin Musham ¶ 3. Since the Mushams bring no challenge to venue or personal jurisdiction (and could not, having brought this lawsuit here), this error is of no significance.

■ Next, the Mushams complain that defendants have failed to offer "any reason to single out the Mushams" from the rest of the public "as objects of this Counterclaim." Since the Mushams are officers of plaintiff, their profession of bewilderment at having been "singled out" is frivolous.

The Mushams argue that the actions complained of—specifically, commencing and announcing this lawsuit—are not tortious. But they have cited no authority supporting this proposition and are not entitled to dismissal on this basis for that reason alone. Local Civil Rule 3(b).

Finally, the Mushams assert that the allegations of their personal involvement are insufficient. A simple reading of paragraph 53 demonstrates the falsity of their contention that the allegations are merely conclusory. At least two specific acts—commencement and announcement of this lawsuit—are set forth. Whether those acts state a cause of action has not been properly raised, but the allegations cannot be termed mere conclusions. *Compare Harper v. United States*, 423 F.Supp. 192, 196 (D.S.C.1976).

■ The Mushams' contention that the allegations are insufficient to establish their liability for acts they undertook on behalf of the corporation is also meritless.[25] Under New York and federal tort law, the general rule is that "a corporate officer who participates in a tort, even if it is in the course of his duties, may be held individually responsible." *National Survival Game v. Skirmish, U.S.A., Inc.*, 603 F.Supp. 339, 341 (S.D.N.Y.1985). Even the case upon which the Mushams rely concurs. *Max Daetwyler Corp. v. Input Graphics, Inc.*, 541 F.Supp. 115, 116–17 (E.D.Pa.1982) (corporate officers are individually liable for corporation's allegedly tortious acts of unfair competition if they were personally involved "to some extent"). Even if the somewhat stricter rule for patent infringement set forth in *Max Daetwyler* applies here, *see id.* at 117, it is satisfied by defendants' allegations of willfulness and deliberateness. *Ibid.* ("when corporate officers are shown to be a moving, active force behind the infringement—in other words, where their acts are 'willful or deliberate'—they may be held jointly liable with the infringing corporation").

The Mushams' effort to distinguish *National Survival Game, supra*, and the cases cited therein is unavailing. They cite no other cases in support of their conten-

---

**25.** The Mushams deny trying "hide behind the Gear corporate entity to avoid liability," Plaintiff's Reply Mem. at 3, but there is no other way to understand their argument. In their next sentence, however, they write: "Gear has acted, necessarily through individuals, and defendants seek to attribute the corporate plaintiff's actions quite gratuitously to the Mushams as individuals."

tion that they are not liable for tortious conduct they carried out on behalf of Gear.

 Because all of the Mushams' arguments are facially or demonstrably frivolous, I grant defendants' application for Rule 11 sanctions. Counsel for the Mushams should have known after reasonable inquiry that this motion, based on the arguments offered, was "destined to fail." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). *Prima facie* responsibility for the violation in these circumstances falls upon counsel. *Anschutz Petroleum Marketing Corp. v. E.W. Saybolt & Co.,* 112 F.R.D. 355, 358 (S.D.N.Y.1986). If counsel for the Mushams wishes to challenge that determination, I will follow the procedures outlined in *Anschutz* to resolve the dispute. *See id.* at 360. Counsel for the parties are directed to make good faith efforts to settle the amount of the sanction, failing which defendants may serve and file affidavits setting forth in detail their reasonable costs and fees of responding to this motion.[26]

**Conclusion**

Defendants' motion for summary judgment as to its entitlement to use the mark "L.A. Gear" on clothing is granted. The remainder of defendants' motion for summary judgment is denied. Plaintiff's motion for summary judgment is denied in its entirety.

Defendant L.A. Gear Ltd.'s motion to dismiss for lack of personal jurisdiction is granted.

The motion to dismiss the second counterclaim by additional counterclaim defendants Bettye Martin Musham and William Musham is denied. Defendants' application for Rule 11 sanctions on this motion is granted.

Since there has already been considerable opportunity for discovery in this case, I

will call this case for trial beginning September 28, 1987 at 10:00 a.m. in Room 307 of this Courthouse. Counsel for the parties are directed to serve and file a joint pre-trial order in accordance with the scheduling order entered concurrently herewith, and to appear for a settlement conference September 17, 1987 at 10:00 a.m. in Room 307 of this Courthouse.

It is SO ORDERED.

---

**26.** My rejection of the Mushams' motion is without prejudice to a properly briefed arguments that the acts attributed to the Mushams and Gear are not tortious. I mean to express no view on this question. Of course, if it later appears that there was no reasonable basis in fact or law for the counterclaim, I would consider Rule 11 sanctions against defendants and/or their counsel as well.

Since I grant defendants' application for sanctions under Rule 11, I need not reach their application for sanctions under 28 U.S.C. § 1927.