which would have been charged had the monopoly never been created." Order of May 31, 1979, at 17. The evidence now shows that but for the Order of the Public Service Commission, this difference may never have occurred.

In *Cantor*, the Court noted that it had allowed antitrust liability for private action which involved a mixture of private and public decisionmaking. "In each case, notwithstanding the state participation in the decision, the private party exercised sufficient freedom of choice to enable the Court to conclude that he should be held responsible for the consequences of his decision." *Cantor*, 428 U.S. at 593, 96 S.Ct. at 3119. In *Cantor*, the defendant private utility sought immunity on the grounds that its light bulb exchange program was approved by the state public service commission and could not be abandoned without further approval by the commission. On the facts presented there, the Court found that the responsibility for the continuation of this program lay clearly with the utility and not with the commission. The Court concluded that

> There is nothing unjust in a conclusion that respondent's participation in the decision is sufficiently significant to require that its conduct implementing the decision, like comparable conduct by unregulated businesses, conform to applicable federal law. Accordingly, even though there may be cases in which the State's participation in a decision is so dominant that it would be unfair to hold a private party responsible for his conduct in implementing it, this record discloses no such unfairness. *Id.*

Unlike *Cantor*, the state involvement here was not mere approval of a program initiated by the private party. In fact, the opposite is true. Had the Commission approved defendant's rate filing, the differential would have continued. I & M eliminated the differential only after being ordered to do so by the Commission. Thus, the court finds that on this record it would be unfair to hold defendant liable for imple-

menting an express directive of the Indiana Public Service Commission.

Because plaintiffs have failed to prove several elements necessary to recover under section 2 of the Sherman Act and for the further reason that it would be unfair to hold defendant liable for following the direct Order of the Indiana Public Service Commission, this court finds that judgment must be rendered in favor of defendant and against the plaintiffs.

### Judgment

It is therefore ORDERED, ADJUDGED and DECREED by the court that plaintiffs' requests for injunctive and declaratory relief be, and hereby are, DENIED.

It is FURTHER ORDERED, ADJUDGED and DECREED that plaintiffs take nothing from defendant under their Amended Complaint, that judgment be, and hereby is, rendered for defendant, and that costs be taxed against plaintiffs.

**VITABIOTICS, LTD., Plaintiff,**

v.

**Karl J. KRUPKA, C.T.R. International, Inc., Moor Natural Products, Inc., Omega Biologicals, Inc., Communication Trade Research International, Inc., and Moor Life Products, Inc., Defendants.**

No. 83 C 2782.

United States District Court, E.D. New York.

July 11, 1984.

782

Ladas & Parry, New York City, for plaintiff; Robert Alpert, Sarah Sprung, New York City, of counsel.

Harold Kerner, New York City, for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

The complaint alleges the following. Plaintiff Vitabiotics, Ltd. (Vitabiotics) is a British company engaged in the manufacture, sale and marketing of vitamins and defendant Karl J. Krupka is a resident of New York and the principal officer of the corporate defendants, all five of which were incorporated in New York. Communication Trade Research International, Inc. and Moor Life Products, Inc. have been dissolved. Since 1979, Vitabiotics has sold certain vitamins under the name "OMEGA–ZIII" in a distinctive trade dress consisting of a red and gold package and label. Defendants distributed OMEGA–ZIII vitamins in the United States under authority from Vitabiotics. Although Vitabiotics terminated that relationship in July 1981, defendants Krupka, C.T.R. International, Inc. and Omega Biologicals, Inc. continued to use the OMEGA–ZIII trade name and trade dress and are currently using them in connection with vitamins not manufactured, authorized or controlled by Vitabiotics. Defendants' vitamins allegedly contain unlawful substances and are promoted through false and/or misleading statements.

The complaint seeks injunctive relief, an accounting of defendants' profits, and damages pursuant to Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a) (Lanham Act), common law unfair competition, and state statutes prohibiting dilution, N.Y.Gen.Bus.Law § 368–d, deceptive trade practices, N.Y.Gen.Bus.Law § 349, and false advertising, N.Y.Gen.Bus.Law § 350. The sixth count of the complaint is for breach of contract and seeks to recover $11,806.08 for an unpaid quantity of vitamins.

By an order dated November 29, 1983, this court preliminarily restrained defendants from using the "OMEGA–ZIII" trademark and trade dress and ordered them to serve notice of the injunction on defendants' customers and suppliers, comply with

plaintiff's demand for addresses of parties and names and addresses of principal officers of parties, and to file a written report of compliance with the order.

On March 8, 1984, following an evidentiary hearing, the court adjudged defendants in contempt of the order dated November 29, 1983 and referred the matter to a magistrate for an accounting.

Plaintiff now moves for summary judgment on the first five counts of the complaint and for a second order adjudging defendants in contempt. Defendants move to file an amended answer and counterclaims and for the return of certain documents.

*Motion for Partial Summary Judgment*

Defendants have not filed the statement required by Rule 3(g) of the Civil Rules of this district. That rule directs the party opposing a motion for summary judgment to submit a statement of the material facts as to which it is contended that there exists a genuine issue to be tried, and provides further that:

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

If the facts set out in plaintiff's statement of material facts as to which there is no genuine issue are taken as admitted, plaintiff is entitled to summary judgment. Accordingly, defendants' non-compliance with Rule 3(g) is sufficient reason for the court to grant the motion. However, in the interest of justice the court will consider the motion on the merits and accordingly inquire whether defendants have at any point in their papers opposing the motion "set forth specific facts showing that there is a genuine issue for trial." Federal Rule of Civil Procedure 56(e).

### I

Plaintiff argues that defendants' unauthorized sale of vitamins under exactly the same unregistered "OMEGA–ZIII" trademark and trade dress constitutes a "false designation of origin" in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants admit to deliberately using the same trademark and trade dress. Indeed, they maintain that as a result of their creating the trademark and loaning Vitabiotics $50,000.00 for packaging, they and not plaintiff own the trademark and trade dress. Finally, defendant Karl J. Krupka asserts in his affidavit that even if his use of the trademark and trade dress does violate the Lanham Act, he ought not to be prohibited from selling vitamins identical in appearance to plaintiff's because vitamin supplements in brown gelatin capsules are commonplace and because it is his understanding that dark capsules are needed to prevent exposure of certain ingredients to the light.

It is established that "[a] defendant who deliberately passes off his goods as those of the plaintiff by means of a similar or identical trademark has used a 'false designation of origin' within Section 43(a)." 1 J. Gilson, *Trademark Protection and Practice*, § 7.02[1] (1982), *citing Sutton Cosmetics (P.R.) Inc. v. Lander Co.*, 455 F.2d 285 (2d Cir.1972). Except when a mark is suggestive or arbitrary and fanciful (as opposed to generic or descriptive) the plaintiff must demonstrate secondary meaning. *See, e.g., DCA Food Industries, Inc. v. Hawthorn Mellody, Inc.*, 470 F.Supp. 574, 581 n. 3 (S.D.N.Y.1979). While the mark "OMEGA–ZIII" as applied to vitamins hardly seems generic or descriptive, plaintiff has sufficiently shown secondary meaning in this case. It is undisputed that from 1979 to 1981 "OMEGA–ZIII" vitamins were sold in the United States in packaging indicating that they were manufactured by Vitabiotics and imported by defendant C.T.R. International, Inc. Complaint, Exhibit B. After terminating its relations with defendants, Vitabiotics began to sell substantial quantities of the product through another American distributor and continues to do so. Affidavit

of Charles Joseph Abbott, ¶ 30. Moreover, conscious imitation is strong evidence of secondary meaning. *Harlequin Enterprises, Ltd. v. Gulf & Western Corp.,* 644 F.2d 946, 950 (2d Cir.1981).

██ Trade dress, packaging, and other product features are also protected provided plaintiff demonstrates secondary meaning and non-functionality. *See, e.g., Vibrant Sales, Inc. v. New Body Boutique, Inc.,* 652 F.2d 299, 303 (2d Cir.1981). The particular red-and-gold packaging at issue here, like the "OMEGA–ZIII" trademark itself, possesses secondary meaning in the marketplace. That unique configuration of colors is entirely non-functional. As for the shape, color, and texture of the vitamins themselves, however, the affidavit of Karl J. Krupka is sufficient to raise triable issues both of secondary meaning and non-functionality. Even if a dark brown capsule is not necessary to protect ingredients from the light, consumers of a certain category of vitamins might associate color with therapeutic effect as did patients taking the drug capsules at issue in *Ives Laboratories, Inc. v. Darby Drug Co.,* 488 F.Supp. 394, 399–401 (E.D.N.Y.1980), *rev'd,* 638 F.2d 538 (2d Cir.1981), *rev'd sub nom. Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).

██ Defendants' former status as an authorized United States distributor of plaintiff's product does not entitle them to use the OMEGA–ZIII trademark and trade dress now. Nor would either their alleged loan to Vitabiotics or their alleged role in creating the OMEGA–ZIII name. *Cuisinarts, Inc. v. Robot-Coupe Internat'l Corp.,* 509 F.Supp. 1036 (S.D.N.Y.1981), the only case defendants cite, is entirely inapposite because it involved an American distributor which applied its own preexisting, registered trademark to a foreign manufacturer's food processors.

Summary judgment will be granted on the Lanham Act claim as to the trademark and trade dress and denied as to the color, size or texture of the vitamins themselves.

## II

██ The same undisputed facts entitle plaintiff to summary judgment on the second count, for common law unfair competition under the law of New York. The first user of a distinctive trademark and trade dress may obtain relief under this theory as long as the public is likely to be confused, and need not demonstrate secondary meaning. *Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.,* 618 F.2d 950, 954 (2d Cir.1980), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). Because misappropriation of another's commercial efforts is the essence of the tort, intentional copying gives rise to a presumption that the imitator has succeeded in creating a confusing similarity of appearance. *Id. See also Flexitized, Inc. v. National Flexitized Corp.,* 335 F.2d 774, 781–82 (2d Cir.1964), *cert. denied,* 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965).

## III

██ The third count of the complaint claims a violation of New York's anti-dilution statute, which allows injunctive relief from conduct resulting in a "likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name." N.Y.Gen.Bus.Law § 368–d. The statute's reach includes dilution involving products in direct competition. *See Bally-Midway Mfg. Co. v. American Postage Machine, Inc.,* No. 82 C 2700, at 9 (E.D.N.Y. August 22, 1983). Plaintiff claims that defendants' use of the "OMEGA–ZIII" trademark tarnishes the mark because defendants' vitamins contain two unlawful ingredients, lysine and methionine. It is undisputed that in 1977 and 1978 Vitabiotics, through a distributor, sold vitamins containing lysine and methionine in the United States under the name "OMEGA–H3," and that in 1979 Vitabiotics removed those ingredients and renamed the product "OMEGA–ZIII" to satisfy Food and Drug Administration objections. Defendants' infringing packaging, Exhibit KK to Affidavit of Charles Joseph Abbott, lists lysine and methionine as ingredients and states

that the product was "developed" by defendant Omega Biologicals, Inc. A piece of defendants' promotional literature, Exhibit E to Affidavit of Jorge Rodriguez, touts an "improved OMEGA–ZIII formula" containing "L–Lysine and Methionine as it did in 1978–1980" but says nothing about the reason for the elimination of the ingredients.

While Exhibits I and J to the Affidavit of Charles Joseph Abbott clearly establish that in 1978 the Food and Drug Administration treated lysine and methionine as unsafe food additives in a product such as "OMEGA–H3," plaintiff has not shown as undisputed facts that that agency would do so today nor that the inclusion of those ingredients in defendants' product is likely to tarnish plaintiff's reputation. Plaintiff may still seek relief under the anti-dilution statute, however, on the separate ground that defendants' use of the "OMEGA–ZIII" trademark on a different and purportedly "improved" formula will likely blur the mark's product identification. *See Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir.1983).

■ The undisputed facts establish the elements of an anti-dilution claim as set out in the *Sally Gee* decision. Vitabiotics possesses a distinctive trademark; defendants' actions have created a likelihood of dilution; and, because defendant Krupka knew of Vitabiotics' opposition to his unauthorized use of the trademark and trade dress, defendants have acted with predatory intent. Therefore the court will grant summary judgment on the anti-dilution claim.

## IV

■ The statute that forms the basis of the fourth count provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y.Gen.Bus.Law § 349(a). "Any person who has been injured" by reason of a violation may seek injunctive relief and recover his actual damages or fifty dollars, whichever is greater. N.Y.Gen.Bus.Law § 349(h). While defendants have apparently added some ingredients, the representation on defendants' packaging that the "OMEGA–ZIII" formula was "developed by" defendant Omega Biologicals, Inc. is plainly deceptive. Defendant Karl J. Krupka's admission in ¶ 5 of his affidavit that he sold approximately 1500 cartons of the infringing product establishes injury to Vitabiotics. The court will grant summary judgment for the plaintiff on the fourth count.

## V

For the same reasons that warrant relief on the fourth count, the court will grant the motion as to the fifth count, for "false advertising" prohibited by N.Y.Gen. Bus.Law § 350. That statute, at Section 350–d(3), provides for the same remedies as the "deceptive acts or practices" statute.

## VI

■ Defendant Krupka does not dispute that he controls the corporate defendants. Further, he conceded at the contempt hearing on March 8, 1984 that no one but he has been involved personally in selling and promoting "OMEGA–ZIII." (Tr. 28). Therefore defendant Krupka is personally jointly liable with the three corporations active in the marketing of the infringing materials: C.T.R. International, Inc., Omega Biologicals, Inc., and Moor Natural Products, Inc. There is no basis, however, upon which to grant summary judgment against the two dissolved corporations, C.T.R. International, Inc. and Moor Life Products, Inc.

The court will grant appropriate injunctive relief as plaintiff has shown the requisite likelihood of public confusion under the Lanham Act, *Warner Bros. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir.1981), and has prevailed on the state law claims. In addition, plaintiff seeks an accounting of defendants' profits, damages, costs, attorneys' fees, punitive damages, and an order permitting the destruction of infringing materials.

To obtain summary judgment for damages under the Lanham Act or the New York law of unfair competition "plaintiff must demonstrate by undisputed or indisputable evidence that there was actual confusion." *Bally Midway, supra*, at 8, *citing Perfect Fit Industries v. Acme Quilting Co.*, 618 F.2d 950, 955 (2d Cir. 1980). Plaintiff has not satisfied this stringent standard. Plaintiff is entitled to damages under the New York statutes prohibiting false advertising and deceptive practices, but has not proven the amount of those damages on this motion.

Defendants' deliberate and willful behavior warrants an award of attorneys' fees under the provision for such relief in "exceptional" Lanham Act cases. 15 U.S.C. § 1117. In addition, plaintiff is entitled to attorneys' fees under the New York false advertising and deceptive practices statutes.

Defendants' conduct, while willful, has not been so outrageous as to warrant the extreme sanction of punitive damages under New York law.

The court will order the delivery up and destruction of all infringing materials, but not of unlabelled capsules.

### Motion to File Amended Answer and Counterclaims

Until the United States Marshal arrived at defendants' offices pursuant to this court's seizure order dated February 17, 1984, defendants willfully ignored court processes, this court's preliminary injunction dated November 29, 1983, and repeated urgings of the court and opposing counsel that defendants retain counsel. Through recently retained counsel defendants now move to file an amended answer and two counterclaims.

As nothing in the proposed amended answer would alter the court's disposition of the summary judgment motion, the amendment would be largely futile. Undue delay, undue prejudice to the opposing side, and futility of amendment are proper reasons to deny leave to amend under Federal Rule of Civil Procedure 15(a). *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The motion to file the amended answer is denied.

The first proposed counterclaim asserts that at the time of the creation of the "OMEGA–ZIII" mark, defendants "Krupka and CTR ... lent Vitabiotics $50,000 to manufacture the new OMEGA–ZIII packaging" and that "Vitabiotics agreed to repay the $50,000 in one year." Defendants refer to no written contract. Defendant C.T.R. International, Inc. was not incorporated until 1983 and therefore could not have done anything in 1978 or 1979. Defendant Karl J. Krupka stated in the Answer he filed *pro se* on August 22, 1983 that "As a private person I, Karl J. Krupka, was never engaged in business with Vitabiotics, Ltd." The second counterclaim, which claims ownership of the trademark, is equally meritless. Accordingly, the motion to file counterclaims is denied.

### Second Motion for Contempt

Plaintiff moves for an order adjudging the defendants in contempt and imposing sanctions pursuant to Federal Rule of Civil Procedure 37 on the ground that defendants have failed to produce certain "OMEGA–ZIII"-related documents and a sworn statement of the residences of defendants' principals, in defiance of a subpoena and court orders.

Defendants ignored a subpoena directing them to produce on August 31, 1983 all documents pertaining to the "OMEGA–ZIII" trademark and trade dress. This court's order dated February 17, 1984 directed the United States Marshal to seize and impound all "OMEGA–ZIII"-related books and records and directed defendants to cooperate. According to the affidavit of plaintiff's counsel Robert Alpert, Mr. Krupka was present at that seizure and never suggested it was less than complete. At the contempt hearing on March 8, 1984 the court again directed the defendants to disclose the location of all "OMEGA–ZIII"-re-

lated materials to the United States Marshal. According to the Alpert affidavit, during the implementation of that seizure order on March 15, 1984 Mr. Krupka was not present and defendants' counsel represented that he was unaware of any additional documents. Nonetheless, in response to a letter from plaintiff's counsel stating that certain documents appeared to be missing, defendants produced on April 23, 1984 about 261 pages of documents concerning "OMEGA–ZIII". However, defendants refused to produce the originals of those documents and refused to produce a customer list on the grounds of confidentiality despite plaintiff's counsel's having undertaken to preserve confidentiality. In addition, despite a subpoena in August 1983 and two court orders of November 29, 1983 and March 8, 1984, defendants have not yet complied with the court's order of March 8, 1984 that they disclose the names and addresses of all persons who should have received notice of the preliminary injunction order dated November 29, 1983 as directed by the terms of that order.

Defendants' counsel Harold Kerner has untimely filed a declaration in opposition to the motion dated June 8, 1984 in which he does not deny having failed to produce the materials in question. He asserts that his client has been willing to supply copies with the right to examine originals at a mutually acceptable time and place; that he has offered to provide access to the customer list provided plaintiff's counsel not divulge the contents to his client; and that plaintiff's counsel never asked for a sworn statement of principals.

Although the court will not at this time impose contempt sanctions, the court will award plaintiff the costs of this second motion for contempt and hereby directs defendants to produce within ten days of the filing of this order the following: all original documents still in its possession relating to the "OMEGA–ZIII" trademark and trade dress and to its sales of vitamins under that mark; a sworn statement of the residences of defendants' principals; and the names and addresses of all persons who should have received notice of the preliminary injunction order dated November 29, 1983.

## Motion for Return of Documents

Defendants move for an order directing plaintiff to return all original documents seized pursuant to this court's order dated February 17, 1984 on the grounds that some do not relate to "OMEGA–ZIII"; that defendants need the documents to respond to plaintiff's claim for contempt-related profits in the accounting now before Magistrate Chrein of this court; and that plaintiff no longer needs the use of the documents. Plaintiff's counsel stated at argument of the motion that he would return the originals and retain copies provided that defendants stipulate that the copies plaintiff retains exactly conform in quantity and order to the originals. In light of defendants' past conduct this arrangement seems reasonable and the court will deny the motion on the condition that plaintiff's counsel carries out the representation made at argument.

## Conclusion

Plaintiff's motion for summary judgment as to liability on the first through fifth counts is granted against defendants Karl J. Krupka, C.T.R. International, Inc., Moor Natural Products, Inc. and Omega Biologicals, Inc. and denied against defendants Communication Trade Research International, Inc. and Moor Life Products, Inc. The court will sign an appropriate order enjoining the use of the "OMEGA–ZIII" trademark and trade dress and representations that the "OMEGA–ZIII" formula was developed by Omega Biologicals, Inc. The court will further order the destruction of infringing materials and will award attorneys' fees. The summary judgment motion is otherwise denied. Defendants' motion to file an amended answer and counterclaims is denied. Plaintiff's second motion for contempt is denied at this time, but defendants are directed to produce within ten days of filing of this order the documents and statements specified on p. 15 of this

order, and the court will award plaintiff the costs of the motion. Defendants' motion for return of documents is denied on the condition that plaintiff's counsel carries out the representation made at oral argument.

Submit order.

So ordered.