**FRITO–LAY, INC., Plaintiff,**

v.

**The BACHMAN COMPANY, Defendant.**

**No. 83 Civ. 4484 (MGC).**

United States District Court,
S.D. New York.

Jan. 13, 1989.

Pattishall, McCauliffe, Newbury, Hilliard & Geraldson, Chicago, Ill. by David C. Hilliard, Mark V.B. Partridge, Cahill Gordon & Reindel, New York City, by Thomas F. Curnin, David S. Smith, for plaintiff.

Eikenberry Futterman & Herbert, New York City by Peter G. Eikenberry, Paul R. Levenson, for defendant.

## OPINION AND ORDER

CEDARBAUM, District Judge.

This suit involves the alleged infringement of Frito–Lay's registered "Ruffles" trademark and its unregistered Ruffles trade dress. Frito–Lay claims that the Bachman Company, by marketing "ruffled" potato chips, has infringed the Ruffles trademark under the Lanham Act and New York law (Count III of the amended complaint), and has violated New York's anti-dilution statute (Count II). Frito–Lay also claims that Bachman's "Golden Ridges" trade dress infringes the Ruffles trade dress under the Lanham Act and New York law (Count I).

Frito–Lay has moved for partial summary judgment as to liability on all counts, and seeks both injunctive relief and an award of damages to be determined at a later hearing. Bachman has cross-moved for summary judgment on the complaint and for a declaration that Ruffles is a generic mark and an order that the trademark be cancelled. For the reasons discussed below, each motion is denied.

## BACKGROUND

Frito–Lay, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas. Frito–Lay is a national marketer of snack food products, including potato chips. "Ruffles" is Frito–Lay's federally registered trademark for a brand of ridged potato chips that it has sold since 1958, when Frito–Lay acquired the Ruffles trademark from its predecessor, the Frito Company. The Frito Company had acquired the Ruffles trademark from Bernhardt Stahmer, who first adopted and used the Ruffles trademark in or about 1948. Ruf-

fles potato chips have been sold by Frito–Lay and its predecessors in essentially the same blue and white trade dress since 1964.

The Bachman Company is a Pennsylvania corporation with its principal place of business in Reading, Pennsylvania. Bachman markets various snack food products, including potato chips, in competition with Frito–Lay in the northeast region of the United States. In 1980, Joseph Welch, Bachman's current president, acquired Bachman's assets from the Culbro Corporation.

One line of potato chips that Bachman sells is a ridged variety under the name "Golden Ridges." "Golden Ridges" has been sold in a blue and white trade dress since 1977. In 1981, after reviewing the packaging of all Bachman products, Welch decided to adopt new packaging for the Bachman family of snack products. However, Welch decided not to alter the Golden Ridges trade dress.

In the spring of 1982, Bachman decided to add a line of ridged potato chips, cut from a knife different from the one used for the Golden Ridges brand. Bachman began marketing these potato chips as "Bachman's Ruffled All Natural Potato Chips" in March of 1983. Both Golden Ridges and Bachman's Ruffled All Natural Potato Chips are sold through the same channels of trade as Ruffles. All of these potato chips are inexpensive items likely to be bought on impulse.

Frito–Lay commenced this action in June of 1983. Bachman has asserted a number of affirmative defenses, including laches, and a number of counterclaims, including one seeking cancellation of the Ruffles mark, and others alleging violations of the antitrust laws.

In the early stages of this lawsuit, Bachman filed a motion for summary judgment, arguing that its use of the word "ruffled" did not infringe the Ruffles mark, that Bachman's use was a fair use, and that the New York anti-dilution statute does not apply to direct competitors. The Court denied that motion in all respects.

In May of 1984, Frito–Lay amended its complaint to add a claim that the Golden Ridges trade dress infringes the Ruffles trade dress.

The antitrust counterclaims have been the subject of other decisions by this Court, see *Frito–Lay, Inc. v. The Bachman Co.,* 659 F.Supp. 1129 (S.D.N.Y.1986), while a separate, non-jury mini-trial, limited to the issues of laches and acquiescence, was held in May of 1987. That decision concluded that Frito–Lay's trade dress claim was not barred by those defenses.

After the completion of discovery, Frito–Lay filed the motion for summary judgment now before the Court, and Bachman responded with its cross-motion.

## DISCUSSION

## COUNT III—TRADEMARK INFRINGEMENT

### A. *Establishing Liability—Likelihood of Confusion*

Frito–Lay alleges that the use of the word "ruffled," in "Bachman's Ruffled All Natural Potato Chips," infringes Frito–Lay's federal and state rights in the registered Ruffles trademark. To obtain relief, Frito–Lay must prove that because of Bachman's use of "ruffled," "an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Banff Ltd. v. Federated Department Stores, Inc.,* 841 F.2d 486, 489 (2d Cir.1988) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979)); *see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 871 (2d Cir. 1986); *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 618 F.2d 950 (2d Cir.1980), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982).

The Second Circuit has adopted a multifactorial balancing test for evaluating trademark infringement claims. Generally referred to as *"Polaroid* factors," after the classic opinion by Judge Friendly in which they were enumerated, these factors include the strength of the senior user's

mark, the degree of similarity between the marks, the proximity of the products, buyer sophistication, actual confusion, and the junior user's intent in adopting its mark. *See Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *see also Hasbro, Inc. v. Lanard Toys, Ltd,* 858 F.2d 70 (2d Cir.1988). None of these factors is dispositive, and each must be evaluated according to the way in which it bears on the ultimate question of confusion. *Banff,* 841 F.2d at 490.

■ Frito–Lay argues that application of the *Polaroid* factors entitles it to summary judgment on its infringement claim. Bachman responds that rather than establishing likelihood of confusion, an analysis of the facts shows that the infringement claim must be dismissed. I conclude that although Ruffles is a strong trademark, there is a genuine factual issue concerning the similarity between Ruffles and "ruffled" that precludes summary judgment in either party's favor.

### 1. Strength of the Ruffles Trademark

The first *Polaroid* factor, the strength of the trademark, refers to the mark's "tendency to identify the goods sold under the mark as emanating from a particular source." *McGregor–Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979); *see also Lois Sportswear, U.S.A. Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 873 (2d Cir 1986). Strength is often measured preliminarily according to the mark's categorization as generic, descriptive, suggestive, or arbitrary, classes which generally reflect the increasing level of protection to which the mark is entitled. The dispositive consideration, however, is the mark's distinctiveness, or "origin-indicating" quality. *Banff,* 841 F.2d at 491.

■ Ruffles is a very strong mark, and is entitled to broad protection, for several reasons. First, Ruffles has become incontestable under § 15 of the Lanham Act, 15 U.S.C. § 1065, which not only constitutes "conclusive evidence" of Frito–Lay's "exclusive right to use the registered mark," Lanham Act, § 33, 15 U.S.C. § 1115, but

also means that the Ruffles mark may not be challenged as "merely descriptive," and that secondary meaning is presumed. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

In addition, the uncontested facts show the distinctiveness of the Ruffles mark. Frito–Lay has been using Ruffles as the brand name of its ridged potato chips for almost thirty years. It is undisputed that Frito–Lay has advertised Ruffles extensively, under the well-known slogan, "Ruffles have Ridges." Ruffles potato chips have experienced strong sales. Only one other potato chip manufacturer prior to Bachman had adopted a mark containing the root term "ruff," but that manufacturer ceased using it upon Frito–Lay's demand. Finally, Frito–Lay marketing surveys evidence strong consumer recognition of the Ruffles mark as a brand name for ridged potato chips. Under these circumstances, Ruffles is a strong, distinctive mark, increasing the likelihood that Bachman's use of "ruffled" will confuse consumers.

### 2. Similarity

Similarity between a senior and junior users' marks is a fundamental *Polaroid* factor, so much so that "courts have consistently reserved the right to decide whether a visual comparison ... reveals such a lack of substantial similarity as would preclude any likelihood of confusion." *S.C. Johnson v. Carter–Wallace,* 614 F.Supp. 1278, 1318 (S.D.N.Y.1985); *see also Warner Bros. v. American Broadcasting Co.,* 720 F.2d 231, 246 (2d Cir.1983) (affirming district court's finding of no likelihood of confusion based on visual comparison alone).

Aurally, "ruffled" and Ruffles are virtually identical. They are also visually similar when typewritten. Thus, when appearing in radio or print advertising, for example, the terms could be confusingly similar to targeted consumers.

On the other hand, when these words are considered in the context of their respective

packaging, and in terms of their overall impression, *see McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1133 (2d Cir. 1979); *see also C.L.A.S.S. Promotions v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir.1985); *Lever Brothers v. American Bakeries Co.*, 693 F.2d 251, 257 (2d Cir. 1982), this similarity is reduced.

For example, the word "Ruffles," which may be considered a noun, is written in upper and lower case red letters on a white background, and appears virtually alone at the top of a blue and white glassine package. "Ruffled," which is arguably an adjective, is written in all capital letters, on a blue and gold metallic package, and with the Bachman name and logo appearing directly above it. This use of the Bachman name is particularly important because it specifically identifies the source of the "ruffled" potato chips, and thus may diminish the likelihood of source confusion. *See McGregor–Doniger*, 599 F.2d at 1134; *see also Lever Brothers*, 693 F.2d at 257 (defendant's identification of its bakery divisions on packaging "substantially negate[d]" likelihood of confusion); *but see A.T. Cross v. Jonathan Bradley Pens*, 470 F.2d 689, 692 (2d Cir.1972) (defendant's use of own name could confuse consumers by implying licensing agreement with plaintiff).

In short, a trier of fact could decide reasonably either that the dissimilarities in overall presentation create an overall impression weighing in Bachman's favor, or that the dissimilarities are insufficient to overcome the aural and typewritten similarity supporting Frito–Lay. Regardless of the effect of the other factors, the determination of the issue of similarity would have such a substantial impact on the ultimate determination of likelihood of confusion that summary judgment on the trademark infringement claim, on the basis of likelihood of confusion, is inappropriate in either party's favor.

### B. The Fair Use Defense

Frito–Lay cannot obtain relief under the Lanham Act, despite the incontestability of the Ruffles mark, and regardless of likelihood of confusion, if Bachman's use of "ruffled" qualifies as "a use, otherwise than as a trade or service mark, ... of a term or device which is descriptive of and used fairly and in good faith only to describe to users [Bachman's] goods or services...." Lanham Act, § 33(b), 15 U.S.C. § 1115(b)(4); *see also Abercrombie & Fitch v. Hunting World Inc.*, 537 F.2d 4, 12 (2d Cir.1976) (when fair use defense is asserted, focus is on use of words, not nature or meaning in the abstract).

Bachman argues that it has established the fair use defense with respect to the trademark infringement claim, and is entitled to summary judgment on that basis. Bachman asserts that "ruffled" is "undisputably descriptive" as applied to its potato chips, and that the prominent display of the Bachman name and logo on a trade dress entirely dissimilar from the Ruffles package shows Bachman's good faith. On Bachman's first summary judgment motion, the Court held that Frito–Lay had raised genuine issues of material fact with respect to Bachman's contentions. Bachman has not resolved these issues on its current motion.

For example, the use of the Bachman name does not necessarily negate the possibility that "ruffled" is also being used in a trademark sense, especially since it appears on the package as prominently as the housemark. *See, e.g., Venetianaire Corp. of America v. A & P Import Co.*, 429 F.2d 1079, 1082 (2d Cir.1970) (prominent use of "Hygienic" infringed "Hygient" trademark, despite descriptive nature); *but see, e.g., Eli Lilly v. Revlon, Inc.*, 577 F.Supp. 477 (S.D.N.Y.1983) (finding fair use even though contested words were displayed more prominently than descriptive words used in other products in the line and were written in bigger letters than defendant's housemark); *Schmid Laboratories v. Youngs Drug Products*, 482 F.Supp. 14, 20 (S.D.N.Y.1979) (prominent use of contested word did not detract visual attention from brand name, and served only to describe product).

In addition, it is undisputed that other potato chip manufacturers use other terms

to describe ridged potato chips, including "ridged," "rippled," and "dip style." Bachman is therefore not foreclosed from adopting a descriptive term for its potato chips because of Frito–Lay's right to exclusive use of "Ruffles." The availability of these other terms raises a question as to Bachman's asserted good faith use. *See, e.g., Salton, Inc. v. Cornwall Corp,* 477 F.Supp. 975, 989 (D.N.J.1979) (rejecting fair use defense in part because defendants could not show necessity of name choice).

Furthermore, Frito–Lay offers other undisputed facts bearing on Bachman's intent in adopting "ruffled." Frito–Lay asserts, for example, that Bachman had actual knowledge of Frito–Lay's registration of Ruffles, and that Bachman failed to obtain legal advice before deciding to use "ruffled," even though Bachman had never seen any potato chip manufacturer other than Frito–Lay use the word "ruffles" or a variant of it. Awareness of pre-existing use of a mark can give rise to an inference of bad faith. *Centaur Communications v. A/S/M Communications,* 830 F.2d 1217, 1228 (2d Cir.1987). Thus, Bachman's motion for summary judgment on the trademark infringement claim, on the basis of its assertion of the fair use defense, is denied.

## COUNT II—DILUTION

Frito–Lay claims that, in addition to infringing the Ruffles trademark, Bachman's use of "ruffled" dilutes Ruffles in violation of the New York anti-dilution statute, General Business Law § 368–d. Section 368–d provides that:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark ..., notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

N.Y.Gen.Bus. Law § 368–d (McKinney 1984). The necessary elements of a dilution claim are possession of a strong, distinctive trademark and likelihood of dilu-

tion. *Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 625–26 (2d Cir.1983). Likelihood of dilution includes the likelihood that the junior user's adoption of the mark will "blur" the senior user's product identification. *Id.* at 625 (quoting 3 R. Callman, *The Law of Unfair Competition, Trademarks, and Monopolies,* § 84.2). Since injunctive relief is involved, a court must also consider the junior user's good faith when assessing a dilution claim. *Id.* at 626; *Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc.,* 559 F.Supp. 1189, 1206 (E.D.N.Y.1983).

Bachman argues initially, as it did on its earlier motion, that the anti-dilution statute does not apply to direct competitors such as Bachman and Frito–Lay. Two Southern District judges have read the leading New York case, *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977), to so limit the statute's reach. *See Business Trends Analysts v. Fredonia Group, Inc.,* 650 F.Supp. 1452, 1458 (S.D. N.Y.1987); *Aris–Isotoner Gloves, Inc. v. Fownes Brothers Co.,* 594 F.Supp. 15, 24 (S.D.N.Y.1983). These decisions focus on certain language in *Allied,* which did not involve direct competitors, in which the Court of Appeals noted that:

> The evil which the Legislature sought to remedy was not public confusion caused by similar products or services sold by competitors, but a cancer-like growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trade-mark or name.... The harm that section 368–d is designed to prevent is the gradual whittling away of a firm's distinctive trade-mark or name.... The ultimate effect has been appropriately termed dilution.

42 N.Y.2d at 632, 399 N.Y.S.2d 628, 369 N.E.2d 1162.

On the prior motion, the Court rejected Bachman's argument and held that the anti-dilution statute applies to competitors. This decision interpreted *Allied* as specifically including noncompetitors rather than excluding competitors.

Several cases have applied the anti-dilution statute to competitors. *See, e.g., LeSportsac, Inc. v. K Mart Corp,* 617 F.Supp. 316 (E.D.N.Y.1985); *Vitabiotics, Ltd. v. Krupka,* 606 F.Supp. 779 (E.D.N.Y.1984); *Dreyfus Fund, Inc. v. Royal Bank of Canada,* 525 F.Supp. 1108 (S.D.N.Y.1981); *Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc.,* 559 F.Supp. 1189 (E.D.N.Y.1983). In *LeSportsac,* for example, the court noted that to interpret the statute to exclude competitors could only result from a "tortured statutory construction." 617 F.Supp. at 317.

■ After examining both the plain language of the statute and the leading cases, I follow the law of the case that the anti-dilution statute applies to direct competitors, and Frito–Lay may seek relief under it.

■ Turning to the merits of Frito–Lay's claim, disputed facts concerning Bachman's intent once again preclude summary judgment in either party's favor. Bachman asserts that its "ruffled" chips are cut from a knife different from the one used for Golden Ridges chips, a fact that Frito–Lay does not dispute. Thus, Bachman argues that it had a legitimate business reason for wanting to use a new and different term to describe these ridged chips. Bachman also contends that its adoption of a package that is not similar to the Ruffles package, plus the prominent display of the Bachman name and logo, demonstrate good faith on Bachman's part.

As noted above, Frito–Lay has offered evidence that it contends shows wrongful intent. The question of intent is an issue of fact not easily resolved on a motion for summary judgment. *See DC Comics Inc. v. Reel Fantasy, Inc.,* 696 F.2d 24, 27 (2d Cir.1982) (issue of good faith "singularly inappropriate for determination on summary judgment" (quoting *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 353 (2d Cir.1981))); *American Optical Corp. v. North American Optical Corp.,* 489 F.Supp. 443 (N.D.N.Y.1979).

Bachman's proffered innocent explanations, and the undisputed facts submitted by both Frito–Lay and Bachman, raise a

genuine issue of material fact with respect to Bachman's issue of intent. I also note that neither party has addressed the element of likelihood of dilution, as opposed to likelihood of confusion, to show that the undisputed facts warrant summary judgment. *See Gear, Inc. v. L.A. Gear California, Inc.,* 670 F.Supp. 508, 521 (S.D.N.Y. 1987). Thus, with respect to the dilution claim, both the motion and cross-motion for summary judgment are denied.

## COUNT I—TRADE DRESS INFRINGEMENT

Apart from its claims concerning the Ruffles trademark, Frito–Lay alleges that Bachman's Golden Ridges trade dress infringes its unregistered Ruffles trade dress, under both the Lanham Act and New York law. Bachman contends that Frito–Lay cannot obtain relief under the Lanham Act because the Ruffles trade dress has not acquired secondary meaning, proof of which the Second Circuit requires to establish an infringement claim for an unregistered trade dress. *See Inverness Corp. v. Whitehall Laboratories,* 819 F.2d 48, 50–51; *Stormy Clime Ltd. v. ProGroup, Inc.,* 809 F.2d 971, 975 (2d Cir. 1987). Bachman also argues that, in any event, there is no likelihood of confusion between the two packages.

Because a genuine issue of material fact has been raised concerning likelihood of confusion, affecting liability under both federal and state law, it is unnecessary for the resolution of these motions to examine the requirement of secondary meaning which is peculiar to the Lanham Act claim. *See Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 618 F.2d 950, 952–53 (2d Cir. 1980), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982) (under New York law, senior user not required to establish secondary meaning for trade dress infringement claim). As with the trademark infringement claim, the disputed fact here turns on a key *Polaroid* factor, specifically, the strength of the trade dress.

■ Frito–Lay argues that its trade dress is very strong because it is an arbi-

trary and distinctive combination of colors and graphic features, because Ruffles potato chips have enjoyed massive sales, and because the trade dress has been the subject of massive advertising. Even accepting that the Ruffles trade dress may be classified as arbitrary, this categorization is not dispositive on the issue of strength of the trade dress. As discussed above, "the strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public." *Banff, Ltd. v. Federated Department Stores, Inc.*, 841 F.2d 486, 491 (2d Cir.1988) (quoting *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979)); *see also Centaur Communications v. A/S/M Communications*, 830 F.2d 1217, 1225–26 (2d Cir.1987); *Plus Products v. Plus Products Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir.1983) ("plus" suggestive but weak); *Lever Bros. v. American Bakeries Co.*, 693 F.2d 251, 256–57 (2d Cir.1982) ("autumn" arbitrary but weak).

Bachman contends that color is a weak basis for asserting trademark rights, and that Frito–Lay's use is not distinctive because blue and white packages are commonly used in the potato chip industry for unflavored ridged potato chips. In support of this contention, Bachman offers examples of other manufacturer's blue and white packages for such potato chips. Bachman also submits different packages for sour-cream-and-onion and barbecue flavored potato chips to show industry use of green and red, respectively, in those trade dresses. Finally, Bachman notes that at the laches mini-trial, William Kiely, Frito–Lay's senior vice-president of sales and marketing, testified that blue was a predominant color in packages used for ridged potato chips.

By offering other blue and white bags as evidence of an industry convention for potato chip manufacturers, Bachman has raised a genuine issue of fact concerning the distinctiveness, and the corresponding strength, of the Ruffles trade dress. *See also S.C. Johnson & Son v. Carter–Wallace, Inc.*, 614 F.Supp. 1278 (S.D.N.Y.1985) (predominant use of lime green and blue on shaving cream cans, denoting lime and menthol "flavored" shaving cream, respectively, reflected industry convention and was neither unique nor original to plaintiff). This issue, since it affects the degree of protection to which Frito–Lay is entitled, precludes summary judgment in Frito–Lay's favor on this count. However, the undisputed facts that Frito–Lay has been using the trade dress for at least fifteen years, that the trade dress has been featured extensively in advertising, and that Ruffles potato chips experience strong sales could also lead a trier of fact to determine reasonably that the trade dress is a strong one deserving broad protection. Thus, I also deny summary judgment in Bachman's favor on the trade dress claim.

## THE CANCELLATION COUNTERCLAIM

In addition to seeking summary judgment in its favor on Frito–Lay's complaint, Bachman seeks summary judgment with respect to its counterclaim that the Ruffles trademark should be cancelled because it is generic, or at least descriptive.

As discussed above, because Ruffles is incontestable under § 15 of the Lanham Act, 15 U.S.C. § 1065, it cannot be challenged as merely descriptive. *Park 'N Fly v. Dollar Park & Fly*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). However, if Ruffles is or has become generic, or, as defined by § 14 of the Lanham Act, 15 U.S.C. § 1064, is a "common descriptive name of an article or substance," it may be subject to cancellation under § 37 of the Act, 15 U.S.C. § 1119.

A term is generic if it "refers, or has come to be understood as referring, to the genus of which the particular product is a species." *Abercrombie & Fitch Co. v. Hunting World*, 537 F.2d 4, 9 (2d Cir.1976). "The standard to be applied in determining whether a term is generic is not whether it has *some* significance to the public as an indication of the nature or class of the article, but whether that is its *principal* significance." *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 295 F.Supp. 479, 490 (S.D.N.Y.1968) (emphasis

in original); *see also King–Seely Thermos Co. v. Aladdin Industries, Inc.*, 321 F.2d 577, 580 (2d Cir.1963). Even if a registered trademark was originally considered suggestive or arbitrary, it may become generic over time, and lose its protected status. *McGregor–Doniger, Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979).

■ The burden is on Bachman to prove that Ruffles is generic. *McGregor–Doniger*, 599 F.2d at 1132; *see also Reese Publishing Co. v. Hampton International Communications, Inc.*, 620 F.2d 7, 11 (2d Cir.1980). Given the statutory presumption of validity accorded to registered marks, Lanham Act, § 33, 15 U.S.C. § 1115, *see also Gear, Inc. v. L.A. Gear California, Inc.*, 670 F.Supp. 508 (S.D.N.Y. 1987), carrying this burden generally requires such evidence as consumer surveys, dictionary definitions, newspapers and other publications, generic use by competitors, testimony of lexicographers, generic use of the term by mark's owner, and use of the term by third parties in trademark registrations. *Gear, Inc.*, 670 F.Supp. at 515; *see also Loctite Corp. v. National Starch & Chemical*, 516 F.Supp. 190, 200 (2d Cir. 1981).

■ As evidence that Ruffles is a generic term for ridged potato chips, Bachman offers Frito–Lay consumer surveys in which respondents referred to ridged chips as "ruffled"; surveys conducted for Frito–Lay in which the consultants concluded that Ruffles may be generic for the consuming public; letters to Frito–Lay from purchasers of its products, which refer to "ruffled" chips; advertising, media, and trade use of the term "ruffled" to describe ridged potato chips; affidavits from Bachman's expert witnesses that Ruffles and "ruffled" are generic terms for ridged potato chips; other isolated food-related uses; the fact that Ruffles was originally marketed as "Potato Ruffles"; and dictionary and thesaurus entries which recognize "ruffled" as synonymous with "rippled" and "ridged."

Frito–Lay contends that the consumer surveys, consumer correspondence, and affidavits from Bachman's experts are inadmissible as evidence, either because they constitute hearsay or because they are beyond the scope of the pre-trial order. Frito–Lay also offers the results of six nationwide consumer surveys, which Frito–Lay produced to Bachman, to show that consumers' brand awareness of Ruffles is extremely high. Frito–Lay argues that the principal significance of Ruffles is as an indication of source, and that the counterclaim should therefore be dismissed.

Notably, Bachman has offered no proof of widespread, as distinguished from fairly scattered, consumer use of "ruffles" as a generic term for food in general or for potato chips in particular, even though the mark has been in use for potato chips for over thirty years. Furthermore, due to Frito–Lay's vigorous policing efforts, proof of which Bachman has itself submitted, Bachman can offer no evidence of widespread industry use. *Compare Miller Brewing Co. v. Heileman Brewing Co*, 561 F.2d 75 (10th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978) (term held generic partly because of widespread industry use of "light" beer); *Gear, Inc. v. L.A. Gear California, Inc.*, 670 F.Supp. 508 (S.D.N.Y.1987) (generic use by competitors of the word "gear" for clothing, as well as dictionary definition of "gear" including clothing); *E.R. Squibb & Sons, Inc. v. Cooper Laboratories*, 536 F.Supp. 523 (S.D.N.Y.1982) (widespread industry use of "angle" to describe type of dental instrument); *Loctite Corp. v. National Starch & Chemical*, 516 F.Supp. 190 (S.D.N.Y.1981) (non-trade media use of "super glue" even before plaintiffs it claimed as trademark).

In any event, Bachman has not shown that the undisputed facts overcome the presumption of validity accorded to the Ruffles mark. Bachman's motion for summary judgment invalidating "Ruffles" is therefore denied.

## CONCLUSION

For the reasons discussed above, Frito–Lay's motion for partial summary judgment is denied. Bachman's cross-motion for summary judgment is also denied. The

parties are directed to attend a pre-trial conference on January 20, 1989, at 2:30.

SO ORDERED.