**E.P. LEHMANN COMPANY, Plaintiff,**

v.

**POLK'S MODELCRAFT HOBBIES, INC., et al., Defendants.**

**No. 90 Civ. 6975 (TPG).**

United States District Court, S.D. New York.

Aug. 15, 1991.

Charles J. Raubicheck, Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff.

C. Evans Tilles, New York City, for defendants.

## OPINION

GRIESA, District Judge.

Plaintiff E.P. Lehmann Company brings this action for tortious interference with business relations and related claims against defendants Polk's Modelcraft Hobbies Inc. and its president, Lewis Polk, seeking damages and injunctive relief. Defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss certain of Lehmann's claims. The motion is denied.

### The Complaint

The following are the essential allegations of the complaint. Lehmann, a German company with its principal place of business in Nurnberg, Germany, manufactures, distributes and sells large scale model railroad equipment under the trademark LGB. Lehmann's registered trademark is referred to as the "LGB with Nameplate" mark. Lehmann pioneered the design and sale of distinctive oversized model railroad track, known as "G" scale track. Lehmann's "G" scale track has an inherently distinctive non-functional trade dress, and Lehmann has engaged in widespread advertising of the "G" scale track in the United States and has made extensive sales of the track in this country.

Polk's Modelcraft, a New Jersey corporation with an office and showroom in New York City, is engaged in the manufacture and distribution of model railroad equipment. Lewis Polk, a resident of New Jersey, is president of Polk's Modelcraft. (Defendants will be referred to as "Polk" or "the Polks.")

In 1984, in order to enhance sales of its products in this country, Lehmann entered into a written agreement with Railway Express Agency, Inc., a distributor of model railroad equipment, pursuant to which REA would be the exclusive importer of Lehmann's products. In exchange for the exclusive import rights, the agreement provided that REA would use its best efforts to promote sales of the LGB line.

In 1985 REA largely abandoned its sales efforts on behalf of Lehmann and appointed Polk to act as its national sales representative for the LGB line. At the time of its appointment, Polk was aware that REA was the exclusive importer of Lehmann's line and that REA was obliged to use its best efforts in promoting Lehmann's products. Polk assumed fiduciary and best efforts obligations to Lehmann.

In early 1987 Polk induced REA to enter into a secret joint venture to manufacture in Korea, and import and sell in this coun-

try, large-scale model railroad equipment that would compete with, and deceptively imitate in appearance, the LGB line. Polk was aware that REA's entrance into such an agreement would constitute a breach of REA's agreement with Lehmann. Polk resigned as REA's sales representative sometime in 1987.

During 1987 Polk, among other things, induced REA to divulge trade secrets concerning the LGB line. In July 1987 Polk began importing from Korea and selling to one of Lehmann's biggest U.S. customers a large shipment of "G" scale track similar to Lehmann's. The track imported by Polk intentionally copied the design and trade dress of the Lehmann track.

Lehmann terminated REA's exclusive agreement in January 1988. Polk then entered into a written agreement with REA formalizing REA's participation in the Korean venture. The venture has continued to the present day and Lehmann's business has been seriously damaged by it. Besides the imitative track, Polk has also copied other well-known features of Lehmann's line, including the LGB with Nameplate trademark.

Lehmann filed the complaint in this action on October 29, 1990, alleging seven claims against Polk. Lehmann's first claim is that Polk breached its fiduciary duty to Lehmann. The second claim alleges that Polk tortiously interferred with REA's contractual relations with Lehmann. The third claim alleges misappropriation of Lehmann's trade secrets. The fourth and fifth claims allege violations of § 43(a) and § 32(1), respectively, of the Lanham Act. The sixth claim involves violations of New York common law. The seventh claim alleges violation of the New York anti-dilution statute. Polk moves to dismiss Lehmann's first, fourth and seventh claims.

## DISCUSSION

It is well settled that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–

46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Spencer v. Casavilla*, 903 F.2d 171, 175 (2d Cir.1990). For purposes of a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### A. Breach of Fiduciary Duty.

■ Lehmann's first claim for relief against Polk is for breach of fiduciary duty. Polk contends that this claim should be dismissed because the complaint contains no allegations from which a fiduciary relationship between Lehmann and Polk could be inferred.

The claim of fiduciary duty is an unusual one. There is no allegation that Lehmann had any direct relationship with Polk. The allegation is that it was REA that brought Polk into the picture by appointing Polk as "REA's national sales representative for Lehmann's line of LGB model railroad equipment in this country" (complaint par. 16). The complaint goes on to allege that the Polk firm and Lewis Polk

> were fully aware of their own 'best efforts' fiduciary obligations to Lehmann that they assumed by virtue of taking the appointment as national sales representative for the LGB line, ...

The theory of the complaint is that REA delegated to the Polks the fiduciary duties REA owed to Lehmann, and that the Polks assumed such duties.

Plaintiff's memorandum cites a number of cases dealing with confidential relationships and relationships of trust. However, all of these cases involve direct dealings between the two parties said to have a fiduciary relationship with one another, and are thus of little or no help in the present case. The issue here is whether a party having fiduciary obligations can delegate those obligations to a third party having no direct relationship with the party to whom those obligations are owed.

The only portion of plaintiff's brief dealing with this issue is a footnote on page 6,

citing a treatise for the familiar proposition that there can be third party beneficiary contracts. The footnote also cites a treatise on agency for the idea that a sub-agent of a fiduciary will owe a fiduciary duty to the principal. However, with regard to the latter point, the brief fails to point out that Polk could not be a sub-agent because REA was not an agent. The contract between Lehmann and REA expressly disclaimed the existence of an agency relationship between those two parties.

It might nevertheless be argued that the asserted agency rule provides some guidance for the present case by analogy. But this point is not developed in plaintiff's brief. In sum, plaintiff's brief is not totally lacking in offering legal support for the fiduciary duty theory, but is most deficient.

Nevertheless, in light of the strict standards which apply to dismissing claims at the pleading stage, the court does not believe that the fiduciary obligation claim should be dismissed. Plaintiff's claim is not without some plausibility, and it is the court's view that it should remain in the case subject to disposition at a later stage. Therefore, the application to dismiss Lehmann's first claim is denied.

## B. *Trade Dress Infringement Under the Lanham Act.*

Lehmann's fourth claim for relief is for trade dress infringement of its model railroad track, brought under § 43(a) of the Lanham Act. Polk seeks to have this claim dismissed on the ground that model railroad track is necessarily functional and therefore not protectable trade dress.

It appears that the claim of functionality raises issues of fact and therefore Lehmann's trade dress infringement claim cannot be dismissed.

## C. *Dilution.*

Lehmann's seventh claim is brought under § 368-d of the New York General Business Law and alleges trademark dilution and injury to business reputation caused by Polk's sales of imitative LGB track and use of a trademark similar to Lehmann's. Polk argues that this claim should be dismissed because the statute does not apply where, as here, the parties are selling competing products. Section 368-d provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, *notwithstanding the absence of competition between the parties* or the absence of confusion as to the source of goods or services. (emphasis added)

Polk interprets § 368-d to mean that absence of competition is a requirement for relief under the statute. Polk relies on the following dictum by the New York Court of Appeals describing the purpose of § 368-d:

> The evil which the Legislature sought to remedy was not public confusion caused by similar products or services sold by competitors, but a cancer-like growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trade-mark or name.

*Allied Maintenance v. Allied Mechanical,* 42 N.Y.2d 538, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1166 (1977).

Plaintiff misconstrues the import of the dictum in *Allied.* In the language relied upon by plaintiff, the court is enunciating the broad legislative purpose behind the anti-dilution statute. In so doing, the court is seeking to provide a foundation for its holding that only "strong" trade names or marks, those with a distinctive quality or which have acquired secondary meaning, merit protection under the statute. The court in *Allied* did not hold or state that the statute is inapplicable to cases involving products in direct competition. *Id.* Indeed, the court's holding is premised on the fact that plaintiff's trade name did not attain secondary meaning and, therefore, was not entitled to protection under the statute. *Id.,* 399 N.Y.S.2d at 633, 369 N.E.2d at 1167. Though the dictum in *Allied* is instructive as to the ultimate legislative purpose underlying § 368-d, it does not make

the absence of competition a requirement for relief.

However, federal courts in the Southern and Eastern Districts of New York have differed over the issue of whether § 368–d applies to disputes involving products in competition, and several decisions in the Southern District have construed the dictum in *Allied* differently from the interpretation given above. The Second Circuit has never addressed this question, though it has discussed the statute in other contexts. *See Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621 (2d Cir.1983).

In *Ives Laboratories, Inc. v. Darby Drug Co.*, 455 F.Supp. 939, 951 (E.D.N.Y.1978), *aff'd on other grounds*, 601 F.2d 631 (2d Cir.1979), a drug manufacturer sought injunctive relief against three other drug manufacturers and three drug wholesalers for making and distributing a competing product. Among other claims, plaintiff sought relief under § 368–d. Without citing, but perhaps alluding to, *Allied*, Judge Nickerson stated that the statute "was apparently designed to permit injunctions in trademark, trade name and unfair competition cases where the defendant was engaged in a category of business different from that of plaintiff." *Id.* at 951. The court further stated that the language of the statute "has apparently never been read to expand the law of unfair competition as applied to competitors" and denied injunctive relief. *Id.*

*Playboy Enterprises, Inc. v. Chuckleberry Pub.*, 486 F.Supp. 414 (S.D.N.Y.1980), was an action for trademark infringement and unfair competition arising out of defendants' proposed use of a trade name that was similar to plaintiff's. Citing *Ives*, Judge Sofaer stated in a footnote that "[i]n view of the finding of likelihood of confusion, it is unnecessary to decide whether defendants' proposed use of the PLAYMEN mark would violate New York's anti-dilution statute, which in any event seems inapplicable to similar, competitive products." *Id.* at 418 n. 1. Likewise, in *Aris–Isotoner Gloves, Inc. v. Fownes Bros. & Co.*, 594 F.Supp. 15, 24 (S.D.N.Y.1983), the court was faced with an anti-dilution claim involving "similar and competitive" products. Quoting the dictum in the *Allied* decision without further elaboration, Judge Sweet dismissed the claim.

In 1984 Judge Nickerson again had occasion to decide whether § 368–d applied to claims involving products in competition. In *Vitabiotics, Ltd. v. Krupka*, 606 F.Supp. 779 (E.D.N.Y.1984), the judge, contrary to his ruling in *Ives*, held that the "statute's reach includes dilution involving products in direct competition." *Id.* at 784.

Facing the same issue and citing the *Vitabiotics* decision in support of his own, Judge McLaughlin of the Eastern District held that "[t]he statute affords relief to plaintiff notwithstanding the absence of competition or confusion." *LeSportsac, Inc. v. K Mart Corp.*, 617 F.Supp. 316, 317 (E.D.N.Y.1985). The judge reasoned that if "the New York State Legislature intended to make the absence of competition a prerequisite to § 368–d relief, it could easily have done so." *Id.* at 319.

In another decision on this issue, Judge Weinfeld of the Southern District held that "relief is not available under the anti-dilution statute where the infringement claimed is by a direct competitor selling a similar product," relying on the dictum in *Allied*. *Business Trends Analysts v. Freedonia Group, Inc.*, 650 F.Supp. 1452, 1458 (S.D.N.Y.1987).

Polk's argument in the present case is not without support, as the conflicting authorities discussed above indicate. Clearly, the New York anti-dilution statute was intended to cover the particular type of trademark infringement which arises when a party attempts to sell non-competing products under a similar name. However, the court is not persuaded that this is § 368–d's sole purpose. The statute affords relief to parties "notwithstanding the absence of competition." The court finds the reasoning of Judge McLaughlin patently correct, that this statutory provision is far different from saying that the absence of competition is a *requirement* for relief.

The court thus holds that the existence of competition does not bar recovery under § 368–d. Accordingly, Polk's motion to

dismiss Lehmann's seventh claim for relief is denied.

## CONCLUSION

For the foregoing reasons, Polk's motion to dismiss is denied in its entirety.

SO ORDERED.